PER CURIAM.
We have consolidated and have before us two appeals taken by the husband in the Gilchrist separation and divorce proceedings. Both will be covered in this opinion, but separate decrees will be rendered.[1]
The first appeal (our Docket No. 85-87) is from a judgment dated October 24,1984, on two rules in the separation suit, which granted temporary custody of two minor children to the wife, subject to specific visitation rights of the husband, with alimony pendente lite and child support in the total amount of $800.00 per month beginning September 1, 1984.
The second appeal (our Docket No. 85-1212) is from the judgment of divorce dated October 1, 1985, awarding permanent custody of the children to Mrs. Gilchrist, subject to the husband’s visitation privileges, but eliminating the requirement that the privileges be exercised at the family residence under Mrs. Gilchrist’s supervision, and fixing the monthly alimony at $200.00 and the monthly child support at $300.00 for each child.
The errors assigned by appellant on both appeals are: (1) finding that joint custody was not in the best interest of the children, particularly without ordering the parties to submit a plan for implementation of such custody; (2) limiting his visitation with the children to every other weekend; and (3) awarding excessive alimony and child support.
Although LSA-C.C. Articles 146 and 157 provide a preference and presumption in favor of joint custody in these matters, it is clear from the wording of Article 146 that the ultimate test is: what is in the best interest of the children? Of course, having seen and heard the testimony of the parties and witnesses, the trial judge’s determination of custody must be accorded great deference.[2] Bagents v. Bagents, 419 So.2d 460 (La.1982); Murphy v. Murphy, 427 So.2d 1278 (La.App. 2d Cir.1983). This rule of appellate review also applies to his determination of alimony and child support. Lamb v. Lamb, 427 So.2d 899 (La.App. 3d Cir.1983).
Having carefully reviewed the record of the two proceedings, we conclude that the presumption favoring joint custody has been rebutted and that the trial judges[3] did not abuse their discretion in awarding custody of the children, subject to visitation rights of the father, to the mother. Nor do we see any useful purpose that would be served by requiring a joint custody implementation plan after the judge has found that such custody is not in the best interest of the children.
The income and expense affidavit of Mr. Gilchrist that was filed in the first proceeding reflects that as of August 16, 1984, his net monthly income was $1,771.73 and his expenses were $2,316.16 per month. The affidavit filed by him in the second proceeding shows an approximate net monthly income of $2,400.00 and expenses (excluding the $800.00 alimony and support award) of $1,922.00 as of August 19, 1985. Mrs. Gilchrist’s affidavits reflect a net monthly income of $800.00 and expenses of herself and children of $2,003.00 as of August 20, 1984; on August 19, 1985, these figures were $852.34 and $2,145.40, respectively.
We note some discrepancies between these affidavits and the testimony of the *230 parties and are convinced that both Mr. and Mrs. Gilchrist have exaggerated their actual expenses to some extent.
All things considered, we are convinced that the trial court’s award of $200.00 per month for alimony pendente lite and $300.00 per child per month for child support is amply supported by the record. Consequently, we find no abuse of discretion by the trial court in this respect. However, in view of Mrs. Gilchrist’s demonstrated earnings, we deem it appropriate to reduce her award of permanent alimony to $100.00 per month.
Civil Code article 146(A)(2) directs, in part, that a court awarding custody to either parent shall consider which parent is more likely to allow the children frequent and continuing contact with the noncustodial parent. We agree with appellant that he should be allowed to see his children more than merely every other weekend as the lower court’s order (in the companion case, our docket #85-1212) directs. We are mindful of the discretion vested in the lower court for visitation questions, but we conclude that allowing the father to visit his children during two full weeks in summer, on alternating holidays during the year, and on Father’s Day would afford him and the children a better chance to maintain a genuine parent-child relationship. This result is clearly contemplated by the Civil Code and by our case law. The judgment in the companion case will be amended to reflect our decision in this regard.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.
APPENDIX I
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES
STATE OF LOUISIANA
REASONS FOR JUDGMENT
In this case for custody, child support, and alimony pendente lite, plaintiff Melba Gilchrist seeks custody of her two minor children and an award of $800.00 per month for alimony and child support.
Defendant Paul Gilchrist is seeking an award of joint custody and an award of $300.00 per month for the care of the two minor children.
In an excellent post hearing brief which this Court adopts in part as its Reasons for Judgment, plaintiff’s attorney summarizes the testimony and evidence as it applies to Article 146 of the Louisiana Civil Code.
In spite of recent changes in the custody laws of this state, the predominate [sic] consideration in granting custody to one parent or the other is still “the best interest of the child.” Lambert v. Lambert, 452 So.2d 244, 246 (1st Cir.1984).
Louisiana Civil Code Article 146 Section C(2) states that “the presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced ....”
Louisiana Civil Code Article 146 Section C(2) lists eleven (11) specific factors which may be used to determine what is in the best interest of the child and it also lists one (1) general provision, that being “any other factor considered by the Court to be relevant to a particular child custody dispute.”
Article 146 Section C(2)(c) states that one (1) consideration is “the capacity and disposition of the parties involved to provide the child with food, clothing, medical care and other material needs.” In connection with this consideration plaintiff illustrates that she is living in what was the family home. It is comfortable, clean, spacious and livable. It provides an excellent environment for the rearing of the four (4) year old and the twelve (12) year old child. No other people live in the family home other than the mother and the two (2) children. On the other hand, the father lives in a house trailer which has been described as being smaller, less comfortable, more crowded *231 and untidy and certainly less livable than the family home. The trailer house certainly does not provide the necessary comforts and living conditions compared to the family home that would be conducive to the proper upbringing [sic] of a four (4) year old child. Furthermore, the trailer home does not provide the necessary living accommodations, spaciousness, privacy, and entertainment facilities necessary for a happy livelihood of a twelve (12) year old child.
The defendant, DeWitt Gilchrist, is sharing the trailer house with John Murphy and Mark Stokes. DeWitt Gilchrist, by his own admission on the stand admits that living under these crowded conditions and with these other two (2) men is not a stable condition conducive to a happy family livelihood and for the proper raising of children but stated that he intends to find better living conditions in the future.
Another factor to be considered by Article 146 is the moral fitness of the parties involved. It was well established by the witnesses for the plaintiff that the main problem with the marriage is that the defendant, Mr. Gilchrist, has had a fidelity problem for quite some time. He openly dates other women and is quite attached to a Kim McGirk who works with him at the same place of employment, Montgomery Ward. Judy Miles testified that Mr. Gilchrist told her in May that he has had a sexual problem since he was a very young man and that he was leaving Mrs. Gilchrist for Kim McGirk. Even Tonya Gilchrist is aware of her dad’s problem and testified that she has seen her dad with several different women over the duration of the marriage. Tonya went on to testify that even during the week before the trial she went to Montgomery Ward to get some money from her dad and saw her dad and Kim McGirk kissing inside the store. At another time she saw Kim McGirk and her dad sitting in a car outside of Montgomery Ward. Tonya who is one of the children whose custody is to be determined said that this upsets her terribly, that she does not like to see her dad hanging around other women and that she particularly does not like to see her mother hurt. Tonya also testified that her dad has a severe drinking problem and that he will come home from work and drink more than a six-pack of beer at a time. She further testified that when he drinks he becomes very violent and that he has often beat Mrs. Gilchrist to the point that she is black and blue and on one occasion she even sustained broken ribs. Her testimony was corroborated by Judy Miles, Debbie Aaron, Leona Allen, and Mrs. Marjorie L. Harwood, who is the plaintiffs mother.
Each of these other witnesses have from time to time been called by Mrs. Gilchrist to come and pick her up and take her to shelter away from Mr. Gilchrist. It was further established by the testimony that on another occasion Mr. Gilchrist became extremely violent with little Aaron who is only four (4) years old at the present time. On that occasion he told Aaron to do something and Aaron refused to do it and the father got on top of the son on the floor and beat him until he was screaming his lungs out and then picked the child up by the feet and dangled him upsidedown shaking him, yelling at him to stop crying. The child was not only physically hurt but. was also extremely terrified and frightened and was in a state of emotional shock. In addition to the father’s violent attitude when drinking, Tonya, the twelve (12) year old daughter, further testified that on another occasion Mr. Gilchrist drove his wife away from the home and then climbed into bed with Tonya in the nude. When one combines Mr. Gilchrist’s problems with that of John Murphy who lives with him and has admittedly lived a harsh and crude life and who is known to have used drugs, as the testimony established, one could not reasonably conclude that the father’s household could provide a stable, moral and happy atmosphere.
Article 146 also contemplates the problem of reasonable contact with the other spouse. Here Mrs. Gilchrist testified that there should be no problem, that she is willing to grant Mr. Gilchrist as much time as he needs with his children provided he see them at a place where he can not do harm to them and provided that the [sic] *232 does not keep them overnight at least until he has been to an AA clinic and has straightened out his life.
But probably the most important of all of Article 146’s criteria is that of “the reasonable preference of the child, if the Court deems the child to be of sufficient age to express a preference.” Tonya who is now a young lady and is age twelve (12) is certainly of an age where she can determine for herself which parent she feels she would prefer to live with. Tonya unequivocally stated on the witness stand that she wants to live with her mother. She has stated that she fears her father will do physical harm to her and that she does not like the father’s roommates, John Murphy and Mark Stokes. Tonya demonstrated on the witness stand that she is a very intelligent and a mature young lady and that she is very aware of the problems and issues of this marriage and that she could not live a happy existence away from her mother and with her father. Mrs. Gilchrist therefore desires that the Court grant Tonya’s wishes and award custody of Tonya and Aaron to their mother.
Article 146 also provides that “the mental and physical health of the parties involved” should be considered. Mr. Gilchrist stated on the witness stand that when he is feeling down and needs a pick-me-up that “I’ll have a beer if I want one. That’s what I’ll do.” However, nearly all of the witnesses for the plaintiff testified that his problem is not knowing when to stop and that he becomes dangerous and violent once he has had a few beers or more. Furthermore, Mr. Gilchrist testified that “children are number one in my life.” However, Mr. Gilchrist can not honestly make that statement if he thinks about the fact that he was not even around for the birth of his son, Aaron, and was not even aware of the birth of his son for quite some time after he was born. Mr. Gilchrist who is asking for the custody of his son and daughter by his own actions admits that he does not care enough about them to even be around when his son was born.
The presumption of joint custody as being in the best interest of the children has been successfully rebutted as:
1. Defendant has a violent temper when drinking;
2. Defendant has left his wife on at least five (5) occasions for other women and he is presently courting an eighteen (18) year old girl on a daily basis;
3. Defendant’s present residence in a trailer home occupied by himself and two (2) young men is totally unsuitable.
As a result of this testimony and evidence it is the judgment of this Court that the sole custody of the two minor children be awarded to the plaintiff Melba L. Gilchrist. Defendant DeWitt Paul Gilchrist shall have visitation rights of every other weekend from 8:00 A.M. to 5:00 P.M. on Saturday and Sunday, to be exercised at the family residence under the supervision of the plaintiff Melba Gilchrist. It is further ordered that defendant DeWitt Paul Gilchrist pay plaintiff Melba L. Gilchrist the sum of $800.00 per month for her support and for the support and maintenance of the two minor children.
Thus done and signed, this 19th day of September, 1984, in Rapides Parish, Alexandria, Louisiana.
/s/ Robert P. Jackson ROBERT P. JACKSON DISTRICT JUDGE

.The above numbered and entitled matter was consolidated at the trial level and on appeal with the case of Gilchrist v. Gilchrist, 492 So.2d 232 (La.App. 3d Cir.1986), which involved a petition for absolute divorce, permanent alimony, and child support. We will dispose of all issues presented in both cases (the issues are identical in each case) in this opinion, but will render a separate decision in Melba Lambert Gilchrist, supra.

. Reasons for Judgment by the trial court are attached as Appendix I. We fully agree except as to the visitation rights and permanent alimony awarded to the wife.

. The two proceedings were heard by different judges of the Ninth Judicial District Court.