653 So.2d 707 (1995)
Laurie FUGE
v.
Hendrik UITERWYK.
No. 94-CA-1815.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1995.
*709 David J. Foshee, New Orleans, for appellee.
Terence L. Hauver, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for appellant.
Before KLEES, JONES and WALTZER, JJ.
WALTZER, Judge.
STATEMENT OF THE CASE
This litigation arises from Laurie Fuge's suit for divorce from Hendrik Uiterwyk. Ms. Fuge appeals from a judgment of the Civil District Court in the Parish of Orleans requiring, inter alia, that her sons Patrick, now 17 years old, and John-Neil, 15 years old, visit Mr. Uiterwyk at his Tampa, Florida residence for two weeks in the Summer of 1994, one week at Christmas of 1994 and a reasonable visit during their Spring Break in 1995, awarding attorneys' fees, providing for counseling for the former Uiterwyk family members and setting a procedure by which Mr. Uiterwyk may purge his contempt of court.
PROCEDURAL BACKGROUND
Ms. Fuge and Mr. Uiterwyk were married in New Orleans, Louisiana in 1970. Two years later they moved to Florida. The children of their union were born in Florida. The couple separated in 1980 and were divorced in Florida in 1985. The Florida court in its final judgment of divorce awarded shared parental responsibility. Ms. Fuge was the primary residential custodian and Mr. Uiterwyk the secondary residential custodian.
Pursuant to a Florida consent judgment of June 21, 1986, Ms. Fuge was allowed to move the children permanently from Florida to New Orleans so that she could attend Tulane Law School. This judgment provided that Florida would retain jurisdiction over the parties for a period of one year.
On September 29, 1987, Ms. Fuge filed a rule in Orleans Parish asking the trial court to change custody, alter visitation and increase child support. The trial court issued an injunction prohibiting Mr. Uiterwyk from filing suit in Florida on the same issues. Three weeks later Mr. Uiterwyk filed suit in Florida to revoke the 1986 consent judgment and to hold Ms. Fuge in contempt for failure to abide by the court-ordered visitation. In Orleans Parish, Mr. Uiterwyk filed an exception to jurisdiction relying on the Uniform Child Custody Jurisdiction Act (UCCJA), La.R.S. 13:1700 et seq. The Civil District Court for the Parish of Orleans sustained the exception.
Ms. Fuge filed a motion for a new trial which was denied without a hearing, and appealed the trial court's determination. This Court held that the Louisiana courts had jurisdiction under La.R.S. 13:1700 et seq. *710 and remanded the case for further proceedings.
On August 2, 1989, the Florida courts deferred jurisdiction to Louisiana. On June 29, 1990 and July 13, 1990 the Louisiana trial court ruled that it had jurisdiction over the subject matter and jurisdiction over Mr. Uiterwyk's person, denied his motion for termination of alimony, increased his obligation for child support, restricted his visitation rights with his minor children, and adjudicated him to be in contempt of court. He appealed, and this court found jurisdiction in Orleans Parish, affirmed the Louisiana court's injunction against Mr. Uiterwyk's proceedings in the Florida courts, terminated Ms. Fuge's right to alimony, affirmed the trial court's finding that there was a significant change in circumstances warranting an increase in child support to $9,000 a month, retroactive to the filing of the petition in 1987 and upheld imposition of attorneys' fees against Mr. Uiterwyk. This Court remanded to the trial court the issues of visitation, place and length of visits, because the circumstances of both parties had changed and the children had grown older. This Court also reviewed the trial court's action finding Mr. Uiterwyk in contempt of court and assessing attorney's fees, holding:
Mr. Uiterwyk's twelve contempt judgments are the result of his failure to pay the amended child support award. Two of the judgments arise from his violation of the trial court's order enjoining the parties from proceeding on the issue of custody and visitation.... We have determined that the contempt charges in this case are civil and find that the trial court was within its great discretion in holding Mr. Uiterwyk in contempt. Fuge v. Uiterwyk, 613 So.2d 717, 722 (La.App. 4th Cir.1993), writ denied 619 So.2d 574 (La.1993) and writ denied 619 So.2d 574 (La.1993).
On remand, the Civil District Court entered judgment on 30 July 1993, issuing a protective order that before Mr. Uiterwyk could proceed with further actions in the trial court, he must pay to Ms. Fuge $250,000 in partial payment of prior judgments rendered in these proceedings. The Court held this payment to be due:
not as a condition precedent to Mr. Uiterwyk having visitation rights established, but rather because of the history of this case, the posture of the litigants, the disparity of financial conditions of the litigants, Mr. Uiterwyk's numerous final judgments of contempt, the fact that at least two of the prior contempt judgments were not appealed, the "in forma pauperis" status of Ms. Fuge, her inability to retain and maintain continuous legal representation, the inequities of the litigation process to Ms. Fuge caused by Hendrik Uiterwyk's litigiousness coupled with his failure to pay court-ordered support and/or obey the judgments of this Court, the fact that Mr. Uiterwyk asks this Court for equitable relief, but comes before the Court without the required "clean hands" of one seeking equity, the extensive and exhaustive nature of the record and the action of three prior trial judges on similar and related issues, and because this Court believes that, before proceeding further, with any aspect of this case, that the scales of equity... need to be balanced; this can only happen if Mr. Uiterwyk is compelled to pay at least a portion of the unliquidated debt to Laurie Fuge....
The Louisiana Supreme Court, on Mr. Uiterwyk's application for Supervisory and/or Remedial Writs, ordered the trial court "to reconsider limited visitation" and otherwise denied the application.
At the hearing held before the seventh Judge of the Orleans Parish court to have jurisdiction over this controversy, testimony was received from the parties, their three children, the children's teachers, grandfather and step-mother and two of Mr. Uiterwyk's Florida associates. Following the hearing, the trial court found Mr. Uiterwyk in contempt of court for failure to pay current child support of $94,930.01 plus judicial interest, made executory; assessed attorneys fees of $500 and costs of the contempt rule to Mr. Uiterwyk; provided that payment of that assessment and compliance with the judgment would purge this finding of contempt; ordered limited visitation in Tampa, Florida between Mr. Uiterwyk and his two minor children, after completion of a counseling *711 session, for two weeks in Summer, 1994, one week during the 1994 Christmas holidays, and a reasonable amount of visitation during the children's 1995 Spring Break from school, and ordered that Ms. Fuge, Mr. Uiterwyk and the minor sons begin psychiatric counseling, to proceed at the doctor's discretion. The court also ordered that all prior contempt judgments against Mr. Uiterwyk be held in abeyance for twelve hours prior to and after the scheduled time of counseling sessions.
In the course of its judgment the trial court observed:
1. No compelling reasons exist to require severe restrictions and/or deprivation of Mr. Uiterwyk's visitation rights.
2. The Uiterwyk boys, at sixteen and fourteen years old, "are bright, capable young men; however they are still minors, and the Court cannot ignore the potential ill effects to the children as a result of leaving this decision to them. Moreover, ... it appears from the children's testimony that they would ... choose not to visit with their father. Therefore, the Court finds it cannot leave the decision regarding visitation to the... children, as such an order would effectively deny Mr. Uiterwyk visitation with his children where there exists no compelling reasons for such denial". (Emphasis added.)
3. The court was concerned that the children may have been mimicking what they believe the Fuge family expects of them rather than expressing their own feelings.
4. Ms. Fuge's fear that Mr. Uiterwyk would kidnap the children, while real, is unlikely, "considering his extensive business and family ties in Tampa".
5. Sufficient cause has been shown to require a $100,000 bond to insure Mr. Uiterwyk's compliance with the visitation order.
FIRST AND SIXTH ASSIGNMENTS OF ERROR: The trial court exceeded its mandate from the Supreme Court and considered matters and entered orders beyond the scope of the issues properly before it.
Ms. Fuge suggests that the judgment exceeds the Supreme Court's mandate insofar as it orders psychiatric counseling and reports and holds the court's contempt judgments and arrest warrants in abeyance.
The guiding principle in matters of child custody, of which visitation is but a part, is and must continue to be the best interest of the child. Bergeron v. Bergeron, 492 So.2d 1193, 1199 (La.1986). In matters of visitation, the trial court is vested with much discretion and his findings will not be disturbed absent an abuse of discretion. Zatzkis v. Zatzkis, 632 So.2d 307, 320 (La.App. 4th Cir.1993), writ denied 94-0157 (La. 6/24/94), 640 So.2d 1340, and writ denied 94-0993 (La. 6/24/94), 640 So.2d 1341.
The record provides ample support for the conclusion that the relationships among the minor children, their older brother and their parents is characterized by frustration, fear and anger. The highly charged negative emotions that have developed from the children's early awareness of their father's adulterous relationship with their present stepmother, through the separation and divorce proceedings in Florida, the mother's and children's move to New Orleans to live with the maternal grandparents, and the irregular and insufficient support, both economic and emotional provided by Mr. Uiterwyk, coupled with the background of expensive, acrimonious litigation, have left the parties with seemingly impossible barriers to effective communication. The fact that, over the course of this process, he has been primarily responsible for these conditions by reason of his unbending, vindictive operation of the legal system from his position of economic advantage exacerbates the problem. We find that the trial court did not abuse its discretion in ordering psychiatric counseling for all parties, in the expressed hope that the relationships may be rejuvenated. The counseling order is reasonably related to the Supreme Court's mandate that the limited visitation order be revisited, and is not manifestly erroneous or clearly wrong.
However, the record does not justify abatement of the outstanding contempt judgments against Mr. Uiterwyk. The record shows that his income from his law practice alone, although variable, is no less than $400,000 a year in cash, plus substantial benefits such as use of credit cards without *712 apparent limit, hospitalization, and luxury automobiles for himself and his wife. The record contains no support for Mr. Uiterwyk's alleged inability to pay the arrearage in child support stipulated by the parties and made a part of the judgment below. The abatement order is beyond the Supreme Court's mandate and is vacated.
SECOND, THIRD AND FOURTH ASSIGNMENTS OF ERROR: The trial court improperly prohibited counsel from discussing and reviewing with their client psychiatric reports and children's testimony and failed to allow parents to be present during children's testimony.
The trial judge's refusal to allow the parties access to the psychiatrist's report violates La.R.S. 9:331(B), which provides in pertinent part: "The mental health professional shall provide ... the parties with a written report.... [and] shall serve as the witness of the court, subject to cross-examination by a party." (Emphasis added.) The trial court's judgment allowing visitation in Florida clearly relied on the psychiatrist's report. Apparently, the trial judge accepted the report that Mr. Uiterwyk thought his children's visits to Tampa were "great." Without the opportunity to review the report, and to cross-examine the psychiatrist, Ms. Fuge and the children were denied fundamental due process. The trial judge's ruling against the boys' unequivocal wish to determine for themselves the conditions under which they would visit their father, must have been based heavily on the psychiatrist's report. There simply is no other credible supportive evidence. Ms. Fuge's lack of opportunity to review that report and effectively to cross examine the psychiatrist results in a denial of fundamental due process requiring reversal of the judgment.
Ms. Fuge's right to due process was denied as well by the trial judge's sequestration of the parents during the boys' testimony. While the trial judge enjoys a broad discretion in the conduct of custody proceedings, particularly when the children are of a tender age, this discretion is not absolute. In Watermeier v. Watermeier, 462 So.2d 1272, 1275 (La.App. 5th Cir.1985), writ denied, 464 So.2d 301 (La.1985), the sequestration of parents was held to be an appropriate compromise of conflicting interests where the witness was a six year old, whose very competency to testify was at issue. The Watermeier sequestration order, by its own terms, is neither ordained nor mandatory. The Uiterwyk boys, honor students at Jesuit High School in New Orleans, and declared by the trial judge to be "bright and capable young men," had no need for protection from the mere presence of their parents to balance against Ms. Fuge's due process rights, and her exclusion from the proceedings requires reversal of the judgment below.
FIFTH AND SEVENTH ASSIGNMENTS OF ERROR: The court erroneously forced the children to leave Louisiana for visitation in Florida, contrary to judgments of 28 December 1990 and 14 March 1991.
We find the trial court's ruling requiring that the children visit Mr. Uiterwyk in Florida to be manifestly erroneous and clearly wrong. In failing to credit the Uiterwyk sons' testimony, the trial court ignores the uncontradicted testimony of the children's teachers at Jesuit High School that both children were highly intelligent and honest. The trial judge chose to disregard the children's testimony that their visits to Florida were not at all "great." This included testimony by all three sons that their father beat them with a broomstick, drank and smoked too much, yelled at them, drove his car and his boat while drinking, told them that he had engaged in the tortuous conduct of the prolonged domestic litigation in order to "aggravate" their mother, ridiculed the courts and their "crazy judges," and expressed his belief that with enough money and good lawyers, anyone can "bend the rules." Their last contact with Mr. Uiterwyk, which took place in New Orleans, ended when he cut short their visit, depositing them on the sidewalk in front of their home, and told them that they never had to see him again and he no longer wished to be their father. The three sons expressed their fear of spending time in Tampa, based on the foregoing, and on an incident in which their stepmother was approached on Mr. Uiterwyk's *713 yacht by two men who demanded to see Mr. Uiterwyk and threw Mrs. Uiterwyk overboard. As one of the boys testified, if that could happen to Mr. Uiterwyk's wife, what might not happen to his children?
Mr. Uiterwyk produced testimony by two of his friends, Tampa residents Tim Anderson and Patty Cappy, that the boys' visits were pleasant and that the boys appeared to enjoy themselves. They testified that they had heard the younger boys during their 1990 visit express a wish to live in Florida with the Uiterwyks and their step-son, Justin Graham. Such a conversation was vigorously denied by the boys, and the independence of the two witnesses is suspect. Tim Anderson is an attorney with a referral relationship to Mr. Uiterwyk, who is a successful personal injury attorney in Tampa. Patty Cappy is the wife of another Tampa attorney. She denied any knowledge of business relationships between her husband and Mr. Uiterwyk but, upon being presented with a check drawn by Mr. Uiterwyk in favor of her husband in excess of $12,000 could not explain its consideration. Although they testified to close, personal knowledge of Patrick and John-Neil and to many visits with the boys, Patrick testified he did now know either Anderson or Cappy. As a then 16 year old student in Jesuit High School's Honors Program, maintaining a 3.57 grade point average, it would be manifestly erroneous to conclude that he would not recall two such close relationships as those testified to by Anderson and Cappy.
Patrick testified that while at the age of ten or eleven he enjoyed the visits in Florida with his father, "I was going there because I was told to and he was taking us on vacations. He was buying us gifts." Upon more mature reflection at the age of sixteen, he told the court, "I had plenty of time to think about what had happened in the previous twelve years of my life, and what he had done to me ... [One] time he had hit me, one time, with a broom. He had hit all of my brothers, I believe ... I didn't feel like he really cared about me and it seemed, by his actions, ... not paying Child Support and ridiculing Judges, ridiculing my mom, I thought about that...." He also expressed fear of abduction based upon the experience on an earlier Florida trip when Mr. Uiterwyk refused to allow him to return to New Orleans with his brother Sean, and forced Patrick into an automobile. John-Neil, also a student at Jesuit, with a 2.85 average, testified to having been frightened by the incident in which Mrs. Uiterwyk was thrown overboard. He also spoke of being struck with a broom by Mr. Uiterwyk and of his telling his sons that he did not want to see them again.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Our review of the record in its entirety convinces us that the trial court's findings are not reasonable in light of that record. We are mindful of the standard of review.
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... [A]ppellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... [Where] a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
We are instructed that before a fact-finder's verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Likewise, when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, *714 furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts[1], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216, 221 (La.1994).
The record of this case represents a truly extraordinary example of the abuse of the process of the courts of Louisiana and Florida for the vindictive purpose of Mr. Uiterwyk. The record clearly shows that his sons are able, by their attested intelligence and integrity, to determine whether they wish to visit Mr. Uiterwyk in Louisiana, in Florida, or, indeed, at all. See, La.C.C. art. 131(C)(2)(i). The record establishes further substantial grounds supporting the young men's stated wish not to visit Mr. Uiterwyk in Florida. The record testimony simply does not support a contrary conclusion.
EIGHTH AND NINTH ASSIGNMENTS OF ERROR: The purge provision for the contempt and award of attorneys' fees were inadequate.
Mr. Uiterwyk admitted that during the course of this protracted litigation, he often had sufficient cash on hand to pay the court-ordered child support, and admitted the Louisiana court's authority to make the awards that he ignored. The unpaid child support, according to the record, totalled $530,000 at the time of the hearing, and the parties stipulated to current arrearages of $94,930.01. By consent order, Mr. Uiterwyk agreed that Louisiana's courts had jurisdiction, but unhampered by that consent judgment, he continued to file pleadings in the Florida forum he had chosen. His contempt for the courts of this state and our judgments is apparent from the record. Two years ago, we found an "endless avalanche of repetitive filings of pleadings both here and in Florida, Mr. Uiterwyk's resolute resistance to any and all opinions and orders by the courts in Florida and Louisiana, and Ms. Fuge's obligation to either prosecute or defend on behalf of her children." Fuge v. Uiterwyk, 613 So.2d at 722. There has been no change during the two ensuing years, and Mr. Uiterwyk's program of litigious harassment has proceeded apace.
The record supports Ms. Fuge's contention that the purge provision and $500 award for attorneys' fees are inadequate. The attorneys' fee award of $500 is vacated as being woefully inadequate, and the matter remanded for hearing at which Ms. Fuge will be permitted to produce evidence of her actual legal fees and expenses incurred in protecting her and her children's rights. Zatzkis v. Zatzkis, 632 So.2d at 319-320. It is indeed regrettable that the record does not contain sufficient evidence upon which we might fashion an appropriate award of attorneys' fees. Because the Civil District Court for the Parish of Orleans has adopted a rotation system by which its newest judges hear domestic matters, and the trial judge, like his six predecessors in this case, has now rotated off the domestic docket, these parties will appear before the eighth Civil District Court judge to have jurisdiction over this controversy. We therefore direct the trial judge to review the testimony to be adduced at the hearing on attorneys' fees in light of the *715 entire record of these proceedings, and to ensure that Ms. Fuge is totally compensated for the legal costs and fees incurred in protecting her children's legal rights. We further direct the trial court to include in the award of attorneys' fees Ms. Fuge's fees and costs for this appeal and her fees and costs in the trial court on remand.
DECREE
The judgment providing for purge of Mr. Uiterwyk's contempt and awarding attorneys' fees in the amount of $500, and requiring that the minor children Patrick and John-Neil Uiterwyk visit Mr. Uiterwyk in Tampa, Florida, is vacated. Mr. Uiterwyk's contempt may be purged by payment of all outstanding judgments for child support, attorneys' fees and costs. The judgment insofar as it orders abatement of the outstanding contempt judgments against Mr. Uiterwyk is beyond the Supreme Court's mandate and is vacated. The judgment insofar as it requires Patrick and John-Neil Uiterwyk to visit Hendrik Uiterwyk at the latter's domicile in Florida is vacated. The matter is remanded for determination of the amount of attorneys' fees and costs incurred by Mrs. Uiterwyk, which shall be assessed against Mr. Uiterwyk.
JUDGMENT VACATED IN PART, AFFIRMED IN PART AND REMANDED WITH DECREE.
JONES, J., concurs with reasons.
JONES, Judge, concurs.
I concur with the majority opinion in all respects except as to the issue of visitation.
The majority's decree vacates the trial court's judgment requiring the minor sons of Hendrik Uiterwyk to visit him at his domicile in Florida. It is my opinion that this issue is moot in that the minor children have visited their father on two occasions already; the summer of 1994 and Christmas of 1994. Furthermore, Laurie Fuge applied for writs to this Court to have the visitation scheduled for the summer of 1994 stayed pending her appeal and her application was denied. Laurie Fuge v. Hendrik Uiterwyk, 94-C-1484 (La.App. 4th Cir. 7/28/94). Her application for writs to the Supreme Court on the same issue was also denied. Laurie Fuge v. Hendrik Uiterwyk, 640 So.2d 1361 (La. 7/29/94).
NOTES
[1] See, LSA-Const. Art. 5, section 10(B).