liWOODARD, Judge.
Petitioner, John Dearmon, appeals from a judgment on a rule to modify visitation. The judgment limited his visitation rights with his son, Jacob Dearmon.
FACTS
Plaintiff, John Dearmon, and defendant, Regina Dearmon, were married on October 20, 1990. They physically separated on March 8, 1995, and Regina retained custody of their son, Jacob Dearmon. On July 6, 1995, judgment was rendered giving the couple joint custody of Jacob, stating that John would have visitation with his son from Saturday at 8:00 a.m. until Sunday at 6:00 p.m. for four visits. Thereafter, the visitation would be extended to Friday at 6:00 p.m. until Sunday at 6:00 p.m. At some point, the 6:00 p.m. return on Sundays was changed to 5:00 p.m.
On the first weekend that the extended visitation began, John Dearmon drove with the one-year-old Jacob to a fish fry in Eunice. They arrived sometime after 8:00 p.m. on Saturday night. At about 1:00 a.m. on Sunday, John strapped Jacob into a carjjseat and proceeded to drive back to DeRidder, where John resided. He fell asleep while driving in Beauregard Parish and drove off the road, wrecking into a mailbox, a road sign and a billboard. Jacob, who was thrown from his seat, suffered bruises on his body and was taken by his father to the emergency room at the hospital. He was examined and released upon finding he sustained no injuries.
When John returned Jacob to Regina on Sunday evening, he did not mention the accident. Regina learned of it through happenstance that evening and took Jacob to the emergency room, saying he was squinting and a little dizzy. The doctor took an MRI and found the child showed no injury but said he might be suffering from headaches.
Regina Dearmon filed suit on August 28, 1995, ten days after the accident, asking that Jacob’s visitation with John be limited to daytime visits. She further asked that defendant be found in contempt for not paying past child support owed her.
On October 16, 1995, hearing was held on these matters, and the trial judge ordered that visitation between John and Jacob Dear-mon take place every Sunday from 8:00 a.m. to 5:00 p.m. and that the change of custody take place at the Beauregard Parish Sheriffs Office. Furthermore, the judge ordered this visitation schedule take place until Jacob’s third birthday at which time the visitation would revert back to the previous schedule of alternating weekends. John was also found in contempt of court for failing to pay $165 in child support. From that ruling, plaintiff appeals the visitation arrangement and asks that overnight visitation be reinstated.
ASSIGNMENT OF ERROR
By his sole assignment of error, petitioner, John Dearmon, contends the trial court erred in changing his visitation with his son, Jacob, from Friday at 5:00 p.m. until Sunday at 5:00 p.m., alternating weekends, to visitation every Sunday from 8:00 a.m. to 5:00 p.m.
IsLAW & ARGUMENT
La.C.C. art. 136 states that “[a] parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.” In Duvalle v. Duvalle, 27, 271 (La.App. 2 Cir. 8/23/95); 660 So.2d 152, the court stated, “ ... the paramount consideration in the setting of visitation privileges for the non-eustodial parent is the best interest or welfare of the children. Barberousse v. Barberousse, 556 So.2d 930 (La.App. 3d Cir.1990).” Id. at 157. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight on appeal. Darnall v. Darnall, 95-169 (La.App. 3 Cir. 5/31/95); 657 So.2d 387. “[It] will not be disturbed ... unless a clear showing of abuse of its discretion is made.” (citations omitted). Muller v. Muller, 94-281, (La.App. 3 Cir. 10/5/94); 643 So.2d 478, 483. “The trial court has discretion in tailoring visitation in a manner that minimizes potential risk to the child.” Evans v. Terrell, 27,615, (La.App. 2 Cir. 12/6/95); 665 So.2d 648, 653.
*1008 In Fuge v. Uiterwyk, 94-1815 (La.App. 4 Cir. 3/29/95); 653 So.2d 707, the court stated:
Although we accord deference to the fact-finder, we are cognizant of our constitutional duty to review facts, not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216, 221 (La.1994).
Id. at 713.
In her motion to modify the visitation, Regina contended that John had consistently refused to return Jacob at the designated time on Sundays, 5:00 p.m. She further stated that defendant had failed to pay $165.00 in child support owed and that his actions in driving with the child in the middle of the night and failing to tell her about the accident show that he should be allowed to visit with Jacob only during daytime hours. However, John and Regina provided the only testimony at the hearing.
URegina testified that on most Sundays, John was a half-hour to an hour late. She further stated that while John had paid most of the child support since he was ordered to six months prior, he still owed her $165.00. When questioned by opposing counsel, she admitted that John loved Jacob and cared about his welfare. She further stated she thought he would try to protect the child from harm. She said she objected to him having the baby out at 2:00 in the morning and to him not telling her about the accident. Regina admitted, though, that in the past, she had been in a car at 2:00 in the morning with a small child when she was returning from a trip. Regina admitted that none of the doctors found anything wrong with her son after the accident but said she was concerned about him because he would squint his eyes and rub his head, indicating to her he had headaches.
John Dearmon testified that, although he had fastened his son in his car seat, Jacob was thrown on the floorboard of the vehicle during the accident. He stated there was no alcohol involved in the incident, that he just fell asleep. He further explained that he was not made aware of the change in the time for return for Sunday visitation because he had not received any papers notifying him and that was why he was late one Sunday. John further explained that he had returned the child on time after that. He admitted he had not told Regina about the accident and said it was because he had taken Jacob to the emergency room and found out there was nothing wrong with him. He stated he would have told Regina later, but he figured she would find out and take Jacob back to the hospital. John admitted he should have told her about the accident and that she had a right to know about anything that involved her child. He assured the court that, in the future, he would inform Regina of the child’s whereabouts and anything pertaining to the child medically. John noted that on a previous occasion, Regina had taken Jacob to the hospital, had a CAT scan performed on the child and did not tell him about it. He found out through a third party. John stated that, after the accident, he agreed to no overnight visitation because he felt his wife needed to spend a lot of time with her son. He felt, though, that at this point, he should be allowed overnight visitation. He said he was completely capable of taking care of the child overnight.
John further admitted he owed Regina $38.00 in child support, saying he did not pay her in the first month, May, because he gave her half of their income tax [¿return money and told her that was his payment for May. He stated, though, he would pay her back whatever money the court found he owed.
The trial court found John in contempt of court for failing to pay $165.00 in child support. He was ordered to repay that money in $50.00 increments until it was paid off, along with the established $138.00 monthly owed for child support. Furthermore, the judge changed the visitation to every Sunday from 8:00 a.m. to 5:00 p.m., until the child’s third birthday, at which time the visitation schedule would revert back to alternating weekends. He explained:
Well, gentlemen, as far as I am concerned, Mr. Dearmon has shown a deplorable lack of good judgment in his man *1009 agement of this child. First of all, a one-year-old child does not need to be out in Eunice at a fish fry. A child has nothing it can contribute or learn from that experience. And if Mr. Dearmon is not in the position to have the child during one of his visitation periods, he should forego the visitation and go to the fish fry on his own. He endangered this child substantially by his behavior in this circumstance and his lack of good judgment.
Our jurisprudence recognizes that a father is just as important to the well-being of a child as is a mother, regardless of the child’s age. In Hunt v. Hunt, 95-502 (La.App. 3 Cir. 10/4/95); 664 So.2d 460, the father’s visitation had been set at six hours every other Saturday. As in the instant case, the child involved was a baby.[1] This court noted that one day every two weeks was unreasonable in that it denied the father frequent and continuing contact:
The appellant relies on La.R.S. 9:335 in support of his contention that the trial court erred. The statute provides that the custody order shall allocate time so that the child is assured of frequent and continuing contact "with both parents, and that to the extent feasible, physical custody shall be shared equally. Id. Recently, in Bynog v. Bynog, 95-173 (La.App. 3 Cir. 7/26/95); 663 So.2d 86, we noted that the trial court is obligated under the statute to consider the “equal physical custody to the extent feasible” mandate. Furthermore, we found that unless unfit or otherwise unable to attend to the children’s needs, a parent has a statutorily protected right to play a significant role in caring for the children.
| eThere is considerable jurisprudence on the question of what constitutes frequent and continuing contact with both parents and reasonable visitation rights for non-domiciliary parents. In Bynog, 663 So.2d 86, the lower court awarded joint custody naming the father domiciliary parent and granting the mother visitation on alternating weekends, major holidays, and during four separate one-week periods during the year. In addition, the order required that visitation be exercised within the state. A five judge panel of the court found that the custody plan was inadequate and awarded equal custody in six-month increments and lifted the territorial restriction. In Foy v. Foy, 505 So.2d 850 (La.App. 2 Cir.1987), the father was granted domiciliary custody, and the mother was given physical custody one weekend per month, alternating holidays, and three weekends in the summer, which totaled approximately 48 days per year. In Carroway v. Carroway, 441 So.2d 494 (La.App. 2 Cir.1983), the non-domiciliary father was granted approximately 83 days of physical custody per year. In both cases, the Second Circuit found that the trial court had denied the children frequent and continuing contact with the non-domiciliary parent, and remanded for implementation of a new joint custody plan. In Gilchrist v. Gilchrist, 492 So.2d 228 (La.App. 3 Cir.1986), this court, after finding that the presumption in favor of joint custody had been rebutted, held that the non-custodial husband’s award of visitation only on every other weekend was not sufficient to allow the children frequent and continuing contact with their father. In Gilchrist, this court concluded that a minimum level of visitation would be every other weekend, two full weeks in the summer, alternating holidays during the year, and on Father’s Day.
In addition, we note that in Gilchrist there was more substantive evidence of violence on the part of the father than is present in this ease. Furthermore, there was an evident drinking problem which is not present in the ease before us.
We recognize that the trial court has much discretion in setting the limits of a joint custody arrangement. Muller v. Muller, 94-281 (La.App. 3 Cir. 10/5/94); 643 So.2d 478. However, on its face, the trial court judgment merely pays lip service to the legislature’s pronouncement on *1010 joint custody by calling it an award of joint custody, while denying the father the frequent and continuing physical contact which it was intended that both parents should have. We do not wish to suggest that the trial court improperly considered the tender years of the child in limiting visitation, we merely believe that the order denying frequent and continuing physical contact for the first eighteen months of the child’s life is excessive. As is always the case, the best interest of the child remains the major concern in determining the degree of physical sharing to be granted in each case.
Id. at 461-462.
17John Dearmon admitted that his failure to tell Regina of the accident was improper, and promised to correct that in the future. We note that the trial judge based his decision heavily on the fact that John had his son with him at 1:30 in the morning. While in retrospect, the action was unwise because John was too sleepy to drive, we cannot say that taking a one-year-old to a fish fry shows bad judgment. Furthermore, John has not exhibited a pattern of poor judgment with his son. Therefore, we find that the trial court erred in restricting John’s visitation rights to Sundays only until Jacob is three years old. A reasonable compromise allowing John significant, continuing contact with his son would be visitation on alternating weekends, from Friday at 5:00 p.m. to Sunday at 5:00 p.m. The trial court’s opinion is otherwise affirmed.
CONCLUSION
Considering the foregoing, we reverse the ruling of the trial court insofar as it disallows John overnight visits with Jacob. The visitation is to be reinstated in accordance with the recommendations expressed in this opinion.
REVERSED IN PART, AFFIRMED IN PART.
KNOLL, J., dissents and assigns reasons.

. We note the father in Hunt was up to date on • child support payments and denied any abuse of the child. However, in the case sub judice, Regina has made no claim that John abused the child.