PITMAN, J.
I defendant Michael Keith O’Neal appeals the judgment of the trial court awarding joint custody of WKO, his child with Plaintiff Tracy Lee Wilson, naming Plaintiff as the domiciliary parent and decreasing his amount of visitation with the child. Further, Defendant appeals that portion of the judgment which assessed him 100 percent of the expert witness’s costs for appearing in court and which ordered him to pay any future costs of a parenting coordinator. For the following reasons, we reverse in part, amend and affirm as amended, and affirm in part the judgment of the trial court.

FACTS

Plaintiff and Defendant never married; but, on June 12, 2012, their son, WKO, was born. On June 28, 2012, Plaintiff filed suit in Bossier Parish to establish paternity, custody and child support. Defendant had formally acknowledged the child as his and had been voluntarily paying child support to Plaintiff.
On December 11, 2012, Plaintiff filed a motion for a protective order and alleged that Defendant hired an employee of his, Kevin Anthony Larue, to make a bomb threat in her neighborhood,[1] paid him money to hurt her and fychoked her while she was pregnant with their child.[2] Two separate interim orders were issued, one on December 13, 2012, and the other on March 14, 2013, which allowed Defendant physical custody of the child on Wednesdays, as well as some time on the weekend. The interim orders also contained a provision for seven days of summer vacation. Defendant was to pay child support in the amount of $500 per month. The second order provided that Defendant was to take all prescription medication as prescribed. Trial of all pending matters was scheduled for March 13,2014.
On March 5, 2014, Plaintiff filed a supplemental and amended petition and alleged that it was in the best interest of the child that she be awarded the sole care, custody and control of the child and that she be designated as the domiciliary parent. She claimed that Defendant had pled guilty to the charge of assault for hiring Mr. Larue to make bomb threats on her *210 subdivision and reiterated ⅝ that he' had made a separate attempt to hire Mr. La-rue to kill her. Other allegations included that Defendant had a history of domestic violence and drug abuse. Plaintiff asked that Defendant be ordered to attend a full psychological evaluation- with a mental health professional, as well as drug screening, prior to being allowed visitation with the child. An interim order was issued on April 2, 2014, appointing Dr. Mark Vigen to conduct an evaluation of the mental health -of the parties and for purposes of making a custody recommendation. The order also ^scheduled Defendant’s vacation visitation with the child for July 19-28, 2014, unless otherwise recommended by Dr. Vigen.
In July 2014, Dr. Vigen sent a letter to the court stating that he was concerned about a previous agreement that granted Defendant custody of the child for ten consecutive days between July 19 and July 28, 2014, because that time period was too long for a two-year-old child to be without contact with both parents. The letter, signed by Dr. Vigen and Dr. Todd Lobra-no, suggested a change to the visitation schedule that was in place regarding the vacation period, but it said nothing about deleting Defendant’s Wednesday visitation period. The letter also stated that it was not Dr. Vigen’s final custody or visitation recommendation to the court. After emphasizing the paragraph of the, letter regarding the change in vacation visitation, the trial court noted, “Implement Immediately.”
, On September 11, 2015, trial was held and lasted less than a day. Dr. Vigen was unavailable to testify, so Dr. Lobrano, who had taken part in the evaluation of the parties, testified in his stead. Dr. Lobrano stated that he had helped conduct the interviews of the parties and various family members and friends. He administered a personality assessment and the parenting stress inventory to Plaintiff. He performed collateral interviews of persons related to Defendant and interviewed ,Lt; Shannon Mack of the Bossier Parish Sheriffs Office regarding Defendant’s participation in the case involving a false bomb threat. According to Dr. Lobrano, Lt. Mack did not indicate that Defendant had threatened Plaintiffs life, nor was there | ^evidence to support his involvement in the bomb threat, although Defendant pled guilty to simple battery.[3]
The report génerated by Drs. Lobraho and Vigen contained recommendations based on multiple interviews with both parties, collateral interviews, psychological testing, a review of relevant documents and home visits. The doctors recommended''that Plaintiff be designated the domiciliary parent, with visitation to be granted to Defendant every other weekend and a day in the intervening week, which Dr. Lobrano stated was “standard'visitation.” He stated that, at the age of the child, “one overnight stay is tolerable at two years old with a — several with three day visits- during the week is fine. As they get older though, they-can start to tolerate a little more than that.”
Dr. Lobrano further testified that an 80/20 custody arrangement was appropriate given a moderate to high level of conflict between the parties; and, at the time of the report, there was significant conflict between the parents. He stated that an example of such a- visitation schedule would be two days and one- overnight visit per week. It was rioted that Plaintiff had been allowing Defendant additional daytime visitation when she was working, He also stated that such daytime visitation did not typically impact children because it *211 mimics daycare when they are absent from their primary caregiver for certain periods of time during the week. Overnight visitations tended to be more ritualistic, and Dr. Lobrano testified that children need that time with their primary caregiver.
|BPr. Lobrano also testified that both parents had love and affection' for, and emotional ties with, their son. Both were dedicated to continue his education. He stated that both parties were able to raise the child and that there had been a cooperative effort in the child’s raising between the parents and grandparents on both sides of his family and that the child was equally comfortable in each parent’s household.
Defendant testified that, although ⅛ the past, he and Plaintiff had not ‘‘gotten along,” they now had a better relationship and their only problem in the past was the amount of visitation time with his' son. He stated that Plaintiff had asked his mother to,take care of the child during the week while her mother had medical treatments, which allowed him some extra time with his son. He further stated that, although he has a lawn business, he is also enrolled in school; .and, under his current schedule, he gets out of school on Wednesdays at 3:00 p.m.
On cross-examination, Defendant testified that he wanted to take a greater part in his son’s life. He was raised without his father and he wanted to make sure he was part of his child’s life and that the child knew him. He testified that his relationship with Plaintiff was improved and that they did not currently have any issues. He also stated that he approved of the idea of a parenting coordinator.
Plaintiff testified that she has been employed as a hairdresser for 21 years. She enrolled her child at St. Paul in Shreveport, where he attends daycare/preschool on Mondays, Wednesdays and Fridays. The child attends St. Paul on Wednesdays from 9:00 a¡m. until 2:00 p.m. She stated that she |nwas afraid of Defendant and -that, in her opinion, they did not “get along.” She also stated that, although the earlier court order allowed Defendant to have the child every Wednesday from 9:00 a.m. until 5:30 p.m., the child is now “in school”. until 2:00 p.m. on Wednesdays.
On cross-examination, Plaintiff admitted that both parents had love and affection for, and emotional ties with, the child. She also agreed that each had the capacity and disposition to give the child love, affection and spiritual guidance, as well as being dedicated to continue his education. She denied being an alcoholic, despite having been charged with DWI in 1993 and again in 1999. She stated that, although her mother previously kept the child during the week while she was at. work, her mother’s health problems necessitated that Defendant’s mother now keep the child on Tuesdays, Thursdays and Fridays for the ten-week period, that her mother was in radiation treatment. She noted that her son had just been enrolled at St. Paul and was starting the new schedule there that week. She testified that; she- objected to Defendant having visitation of the child overnight on Wednesdays because she did not believe it was in his best interest to be away from her in the middle of the school week at his young age.
The trial court rendered a judgment orally on the day of the hearing and found that the parties had significant conflict and trouble cooperating with each other. Considering the factors found in La. C.C. art. 134, it decreed -that the parents would share joint custody, with Plaintiff designated as the domiciliary parent, subject to visitation by Defendant every other weekend beginning on Friday at 6:00 p.m. until Sunday at- 6:00 p.m. It ^indicated that Defendant’s school schedule, which was *212 subject to change each semester, caused Defendant to have “no stability or logistical permanence.” It also noted that it had to “take the parties in the position in which I find them here today.” Defendant’s holiday visitation was established, granting him nine days of physical custody of the child for summer vacation during June or July. Visitation for Mother’s Day and Father’s Day was also established. Further, Defendant was ordered to solely bear the expenses associated with the appearance and testimony of Dr. Lobrano in the amount of $750. Dr. Lobrano or his designee was appointed as parenting coordinator to aid the parties in the settlement of disputes; and, it was noted that, since this was Defendant’s request, he would bear all costs associated with Dr. .Lobra-no’s services should they be utilized.
Defendant’s attorney immediately called it to the trial court’s attention that the parties had agreed Defendant could have Wednesday night visitation every other week, to which Plaintiffs'attorney objected. The trial court responded that it would not grant Wednesday night visitation because it would interrupt the child’s school week. Even though the child is currently in preschool, the trial court noted that he will eventually attend school, and visitation on Wednesday nights would interrupt the school week.
Defendant appeals the trial court’s judgment insofar as it terminates his Wednesday night visitation with his son and also orders him to solely bear the expenses of Dr. Lobrano.

¡^DISCUSSION

The visitation schedule

Defendant argues that the trial court failed to implement a visitation schedule that provided shared periods of physical custody that assured him of frequent and continuing contact with his son in accordance with La. R.S. 9:335. He complains that he was given only 67 days of visitation per year, consisting of approximately 4 days per month, with each month having two, 11-day periods in which he has no contact with the child. He argues that the paramount consideration in any determination of child custody is the best interest of the minor child. Custody determinations are made on a case-by-case basis, and the trial court has vast discretion in deciding the matters of child custody. He further argues that a visitation schedule that provides only approximately 4 days per month to a parent is not substantial time, nor is such a small amount of visitation time in the best interest of the child. For these reasons, he contends that the trial court abused its discretion in rendering the visitation schedule.
Plaintiff argues that the trial court did not abuse its discretion in rendering the visitation order and that every consideration presented was supported by testimony and evidence submitted. The trial court was able to assess the witnesses at trial and based its decision on the best interest of the child. Plaintiff contends that the professional’s evaluation of .the parties was comprehensive and thorough. She further contends that the record shows that Defendant’s schedule prevents him from exercising additional visitation. He is currently both working and attending school. He has four |flremaining semesters, and his schedule will change each semester. It was Defendant’s testimony that there is no certainty in his schedule for the next two or three years, while Plaintiff states that she has a steady job at a salon where she has been working for 21 years.
La. C.C. art. 134 concerns determinations made in the best interest of the child. That article- states the court shall consider the following factors:
*213 (1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of tíie existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party. , .
(8) The home, school, and community history of the child.
(9) The reasonable . preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties. -
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Joint custody determinations are governed by La. R.S. 9:335 which provides that the implementation order in joint custody cases allots the time period of visitation “so that the child is assured óf frequent and continuing contact with both parents.” Shared custody is not necessarily required in every case; however, the trial court is required to give each parent substantial time with the minor child. Yerger v. Yerger, 49,790 (La.App.2d Cir.2/27/15), 162 So.3d 603.
Custody determinations are made on a case-by-case basis, and the trial court has vast discretion in deciding the matters of child custody and visitation. Watson v. Watson, 45,652. (La.App.2d Cir.8/11/10), 46 So.3d 218. This discretion is based on the trial court’s opportunity to better evaluate the credibility of the witnesses. Slaughter v. Slaughter, 44,056 (La.App.2d Cir.12/30/08), 1 So.3d 788, citing McCready v. McCready, 41,026 (La. Ápp.2d Cir.3/8/06), 924 So.2d 471. Every child custody case should be decided in light of its own particular set of facts, circumstances and relationships.' A trial court’s determination in the establishment of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson, v. Thompson, 532 So.2d 101 (La.1988).
In Ellinwood v. Breaux, 32,730 (La.App.2d Cir.3/1/00), 753 So.2d 977, this court stated that, when the trial court finds that a decree of joint custody is in the best interest of the child, it does not necessarily .require, an equal sharing of physical custody. Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Breaux, supra. It does not necessarily mean a 50/50 sharing of time. Our jurisprudence recognizes that a father is just as important to the well-being of a child as is a mother, regardless of the child’s age. Dearmon v. Dearmon, 96-222 (La.App. 3d Cir.11/13/96), 682 So.2d 1006.
Inin Breaux, supra, this court cited La. R.S. 9:335 and found- that a visitation award to a mother, who was granted joint *214 custody but was not the domiciliary parent, of approximately 95 days per year, including every other weekend, alternating holidays and four weeks in summer, did not effectuate intent of the legislature; and, thus, the award was amended to add án additional two weeks of visitation during the child’s summer vacation so as to provide the mother with more meaningful contact with the child.
In the case sub judice, given the fact that the trial court found that joint custody was warranted and delineated the factors and facts of the case under La. C.C. art. 134, we find no abuse of discretion in the determination that joint custody is in the best interest of the child. However, we do find that the portion of the order that terminates Defendant’s visitation with his son on Wednesdays was an abuse of discretion. Visitation of 67 days per year is simply not sufficient time to effectuate the intent of the legislature in La. R.S. 9:335 so that the time periods during which Defendant would have physical custody of the child would be enough to assure the child of frequent and continuing contact with both parents. We find, therefore, that. this assignment of error has merit.
For those reasons; the judgment of the trial court terminating Defendant’s Wednesday night visitations.is hereby reversed and is amended to award Defendant overnight visitations with the child every other Wednesday. In all other respects, the judgment with regard to visitation is affirmed.

UfThe costs of Dr. Lobrano as parenting coordinator

Defendant argues that the trial court erred in assessing him with $750 in costs for Dr. Lobrano and in assessing him with future costs associated with Dr. Lo-brano should his services be needed. He asserts that it was Plaintiff who requested a psychological evaluation with a mental health professional and who desired a parenting coordinator to assist them in resolving co-parenting issues and ' mediation. For these reasons, Defendant contends that Plaintiff should be equally assessed with these costs.
Plaintiff argues that it was within the trial court’s discretion to assess Defendant with 100 percent of the costs associated with Drs. Vigen and Lobrano.
La. R.S, 13:3666 concerns costs associated with professional testimony and states in pertinent part as follows:
A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to' show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party east in judgment, which rule haupon being made absolute by,the trial court shall form a part of the final judgment in the cause.
*215 The allocation of court costs is a matter which is subject to the discretion of the trial court. La. C.C.P. art.1920; Ball v. Ball, 32,851 (La.App.2d Cir.3/1/00), 757 So.2d 824. When costs are taxed, expert witness fees are implicitly included. Bentley v. Indus. Fire Protection, Inc., 350 So.2d 982 (La.App. 2d Cir.1977). An expert is entitled to reasonable compensation for his appearance in court and for preparatory work done by him. See La. R.S. 13:3666; Richard v. Wal-Mart Stores, Inc., 29,926 (La.App.2d Cir.10/31/97), 702 So.2d 79, writ denied, 97-3002 (La.2/6/98), 709 So.2d 744. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court, and its allocation of those costs will not be disturbed absent evidence of an abuse of that discretion. Street v. May, 35,589 (La.App.2d Cir.12/5/01), 803 So.2d 312.
Both parties benefitted from the court-ordered evaluations and testimony, and recommendations of Drs. Vigen and Lo-brano. It was within the trial court’s, discretion to allocate those costs to Defendant alone, and we find no abuse of discretion in regard to that allocation. For those reasons, Defendant’s assignment of error is without merit.

CONCLUSION

Based on the foregoing, that portion of the judgment of the trial court which terminated Defendant’s Wednesday night visitation "with the child is hereby reversed and is amended to allow ’him overnight visitation every other Wednesday, in addition to the scheduled visitation of every other weekend. That portion of the judgment which' assessed Defendant with 114⅜750 costs associated with Dr. Lobrano’s court appearance and testimony is affirmed. Further, that portion of the judgment assessing Defendant with all future costs associated with the services of Dr. Lobrano is also affirmed. Costs of this appeal are assessed equally between Plaintiff Tracy Lee Wilson and Defendant Michael Keith O’Neal.
REVERSED IN PART; AMENDED AND AFFIRMED AS AMENDED; and AFFIRMED IN PART.

. The bomb threats occurred on November 30, 2012, and both Mr. Larue and Defendant were charged with intentionally imparting or conveying by use of the telephone, any threat or false information knowing the same to be false, namely a bomb threat, in violation of La. R.S. 14:54.1. On April 9, 2013, Mr. La-rue entered a plea of guilty to communicating false information of planned arson and was sentenced pursuant to a plea bargain agreement to seven years at hard labor, with all but one year suspended and credit for time served. He was placed on three years’ supervised probation with conditions, including that he was ordered to appear and testify truthfully at Defendant’s trial. The charge against Defendant was amended and reduced to simple assault, and he pled guilty to that charge on January 21, 2014, He was fined and ordered to pay $300 and costs or serve 20 days with credit for time served, and to serve 10 days suspended. He was placed on probation, but probation was optional if he paid the fine and costs that day.

. The request for protective order was dismissed with a note from the trial court saying, "Failure to prove any threats of abuse or domestic violence although court notes there is still a criminal investigation proceeding,”

. Defendant actually pled guilty to simple assault.