# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1247


**CAROLYN SANCHEZ**

**VERSUS**

**LOUISIANA NURSERY**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 05-00219
JASON GERARD OURSO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.

### AFFIRMED IN PART, REVERSED IN PART AND REMANDED.


Michael Benny Miller
Miller & Miller
P. O. Box 1630
Crowley, LA 70527-1630
(337) 785-9500
Counsel for Intervenor/Appellant:
Michael Benny Miller


Amanda H. Carmon
Johnson, Stiltner & Rahman
P. O. Box 98001
Baton Rouge, LA 70898-8001
(225) 231-0875
Counsel for Defendant/Appellee:
Louisiana Workers' Compensation Corporation
Louisiana Nursery

**Carolyn Sanchez**
**In Proper Person**
**700 College Road**
**Eunice, LA 70535**
**(337) 546-1611**

**SAUNDERS, Judge.**

This is a workers' compensation case where a claimant fired her attorney, and the discharged attorney filed an intervention naming his former client and the defendants in the principal defendants-in-intervention. The defendants then filed an involuntary motion to dismiss the claimant's principal demand. After the hearing on the defendant's motion, the workers' compensation judge (WCJ) dismissed the entire litigation based on the finding that the claimant had abandoned her claim.

The discharged attorney timely appealed the WCJ's judgment asserting that the dismissal of his former client's claim and his intervention, respectively, was improper. We find that the discharged attorney cannot raise as error the dismissal of his former client's claim, but find that the dismissal of his intervention was in error.

**FACTS AND PROCEDURAL HISTORY:**

On October 9, 2003, Carolyn Sanchez (Sanchez) allegedly sustained injuries due to a work accident while employed by Louisiana Nursery, Inc. (Louisiana Nursery). Sanchez hired Michael B. Miller (Miller) as legal counsel on January 6, 2005.

Sanchez, with Miller representing her, filed a disputed claim for compensation on January 10, 2005, against Louisiana Nursery and LWCC. Miller was then discharged by Sanchez on February 15, 2007. On February 16, 2007, Miller filed a motion and order to withdraw as counsel of record, which was granted. On April 9, 2007, Miller filed a petition for intervention seeking attorney fees as well as expenses and advances incurred with legal interest during his representation of Sanchez.

On October 14, 2008, Louisiana Nursery filed a motion for involuntary dismissal of Sanchez's claim due to her alleged abandonment of that claim. At the hearing for the motion, no argument was made regarding Miller's intervention. At

the end of the hearing, the WCJ dismissed the entire litigation based on Louisiana Administrative Code, Title 40, Part I, Chapter 57, § 5705 entitled "Abandonment" without prejudice with Sanchez being given the right to request reinstatement within thirty days for good cause shown. Miller has timely appealed this judgment, alleging the following two assignments of error:

**ASSIGNMENTS OF ERROR:**

1.    The WCJ erred when it dismissed Miller's intervention.

2.    The WCJ erred when it dismissed Sanchez's claim against Louisiana Nursery.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Miller contends in this first assignment of error that the WCJ erred when it dismissed his intervention citing La.Code Civ.P. art. 1039. Louisiana Nursery counters that Miller's status as a discharged attorney necessitates that his intervention be dismissed with Sanchez's claim. We are moved by neither contention.

Miller's assignment of error poses a question of law. This court, in *Domingue v. Bodin*, 08-62, pp. 2-3 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 657 (citations omitted), stated:

> [a]ppellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. If the trial court's decision was based on its erroneous interpretation or application of the law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court.
>
> Furthermore, under the de novo standard of review, the appellate court assigns no special weight to the trial court and, instead, conducts a de novo review of questions of law and renders judgment on the record.

Louisiana Code of Civil Procedure Article 1039 states, "[i]f an incidental demand has been pleaded prior to motion by plaintiff in the principal action to dismiss the principal action, a subsequent dismissal thereof shall not in any way affect

2

the incidental action, which must be tried and decided independently of the principal

action." An intervention is an incidental demand. La.Code Civ.P. art. 1031(B).

Louisiana Code of Civil Procedure article 1039 is the rule regarding the lack

of effect on incidental demands following the dismissal of the principal demand.

However, jurisprudence has recognized that there are some exceptions when dealing

with a discharged attorney's intervention seeking to recover under the contract

between the discharged attorney and the former client, especially those contracts that

are based on a contingency as authorized by La.R.S. 37:218.[1] Our supreme court, in

*Scott v. Kemper Ins. Co.*, 377 So.2d 66, 69-70 (La.1979) (footnotes omitted), stated:

> As we determined in *Saucier* [*v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La.1978)], statutes which tend to impede or frustrate this Court's constitutionally imposed judicial authority in connection with disciplinary proceedings and regulations of attorney's law practice will not be approved. We said in that case:
>
>> In deciding this case we recognize as a primary consideration the Court's duty to assert the authority Conferred by the Constitution to regulate the practice of law, which stems from the grant of original exclusive

---

[1] Louisiana Revised Statutes 37:218 states:

A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.

B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

jurisdiction of disciplinary proceedings against a member of the bar. La.Const. Art. V, [§]5(B); *See Louisiana State Bar Association v. Edwins*, 329 So.2d 437 (La.1976). As set forth more fully in the dissent on original hearing, this Court's prevailing judicial authority resulted in the adoption and promulgation of the Articles of Incorporation of the Louisiana State Bar Association, which Articles came to incorporate the Code of Professional Responsibility, in lieu of the Canons of Professional Ethics. The Code of Professional Responsibility which regulates attorneys' practices has been recognized as having the force and effect of substantive law. As a result, these rules set forth by virtue of the Court's exercise of its prevailing judicial authority override legislative acts which tend to impede or frustrate that authority; only legislative enactments in this area which aid the Court's inherent powers will be approved.[]

[*Saucier*, 373 So.2d at 115.]

Thus, if [La.]R.S. 37:218 is to be literally applied[,] it must not be in conflict with the Code of Professional Responsibility.

Specifically, two disciplinary rules of the Code of Professional Responsibility (approved by this Court and adopted by the Louisiana State Bar Association) militate against the literal application of the last sentence of [La.]R.S. 37:218.

Disciplinary Rule 2-110(B)(4) recognizes the client's absolute right to discharge his attorney. It provides[,] in pertinent part:

> DR2-110 Withdrawal from Employment[]
>
> . . . .
>
> B) Mandatory withdrawal.
>
> A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
>
> . . . .
>
> (4) He is discharged by his client.

And Disciplinary Rule 5-103, while acknowledging that a lawyer may contract with a client for a reasonable contingency fee, specifically prohibits, as we determined in *Saucier v. Hayes,* an attorney's acquiring

4

a proprietary interest in the client's cause of action:

Disciplinary Rule 5-103

(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses.

(2) Contract with a client for a reasonable contingent fee in a civil case.

Thus an attorney can neither force his continued representation of a client who wishes to discharge him, nor obtain, by any means, a proprietary or ownership interest in the client's claim. Therefore, he may not proceed with the suit or claim as if settlement had not been made. And he has no right to interfere with or nullify the settlement which his former client has made, (as in this case) or chooses to make.

In the case before us, the hearing before the WCJ was for a rule to show cause why the principal demand should not be dismissed. The rule transpired based on Louisiana Nursery's motion for involuntary dismissal. However, Louisiana Nursery's motion did not request dismissal of Miller's intervention, nor did Louisiana Nursery present any argument below as to why the WCJ should dismiss Miller's intervention. Given these facts, this court is troubled that Miller's intervention was dismissed when he was not put on notice of that potential.

The record reflects that at the conclusion of the hearing, the WCJ's order of dismissal was based on "Office of Workers' Compensation Hearing Rule 5705." The WCJ is authorized to do so under La.R.S. 23:1310.1(C), which states the following:

The director [of the Office of Workers Compensation] shall have the authority to adopt reasonable rules and regulations, including the rules of procedure before the workers' compensation judges, according to the procedures established by the Administrative Procedure Act. All rules and regulations, properly approved and promulgated under the Administrative Procedure Act, shall be consistent with the Workers' Compensation Law and shall be binding in the administration of that

5

law.

Under the authority granted by La.R.S. 23:1310.1, the Louisiana Administrative Code, Title 40, Part I, Chapter 57, § 5705, entitled "Abandonment" was promulgated, the text of which, in pertinent part, follows:

A. A claim may be dismissed at the judge's discretion after contradictory hearing properly noticed by the court for lack of prosecution for the following reasons:

  . . . .

  3. where a claim has been pending six months without proceedings being taken within such period. This provision shall not apply if the claim is awaiting action by the workers' compensation court; or

  4. where a party fails to appear for a properly noticed conference;

  5. where an attorney or pro se litigant fails to keep the workers' compensation court apprised of an address change may be considered cause for involuntary dismissal for failure to prosecute when a notice is returned to a party or the workers' compensation court for the reason of an incorrect address and no correction is made to the address for a period of 60 days.

C. Dismissal under this rule shall be without prejudice. Any order of dismissal shall allow for reinstatement of the action within thirty days for good cause shown.

On appeal, Louisiana Nursery argues that the WCJ was proper in dismissing the entire litigation under *Clark v. Aetna Life Ins.*, 510 So.2d 1300 (La.App. 3 Cir. 1987) and *Hawthorne v. National Union Fire Ins. Co.*, 562 So.2d 473 (La.App. 3 Cir. 1990), as those two cases stand for the proposition that a discharged attorney's intervention absolutely must fall when the principal demand is dismissed. We disagree with Louisiana Nursery's interpretation of these two cases.

In *Clark*, a discharged attorney intervened in his former client's workers'

6

compensation suit in order to recover attorney's fees for the defendant's failure to pay medical expenses. The former client's suit was dismissed due to prematurity, and the former client did not appeal that dismissal. The discharged attorney filed an appeal where his principal argument was that the WCJ's dismissal of his former client's claim was improper. This court, based on a client's absolute right to discharge his or her attorney, ruled that the discharged attorney could not raise that issue on appeal because to allow such an argument would, in effect, allow the discharged attorney to continue forward with the former client's case after having been discharged. This court also found that the discharged attorney was not entitled to any fees under the language of his contract with his former client, as no judgment or settlement of his former client's claim occurred. However, the *Clark* court did find that the discharged attorney was properly awarded reimbursement from his former client for expenses he incurred prior to his dismissal.

Like *Clark*, in *Hawthorne*, a discharged attorney intervened in his former client's workers' compensation suit seeking attorney's fees and expenses. The discharged attorney in *Hawthorne* named his former client and the defendants in the principal demand as defendants-in-intervention. The defendants in the principal demand and the former client were granted a motion for summary judgment against the intervention. The discharged attorney argued that he could proceed against the defendants in the principal demand directly for attorney's fees owed under La.R.S. 23:1201.2 for the denial of his former client's benefits that was arbitrary and capricious. This court upheld the WCJ with respect to the summary judgment granted to the defendants in the principal demand because to allow the discharged attorney to proceed would "amount to the continued representation of his former client, which

7

is forbidden by the Rules of Professional Conduct." *Hawthorne*, 562 So.2d at 476. However, the court reversed the summary judgment as related to the discharged attorney's former client, as she was not part of the motion.

Thus, in both *Clark* and *Hawthorne*, the intervening attorney was allowed to pursue recovery under the terms of their respective contracts against their former clients. Further, in *Hawthorne*, our reading of the opinion is that had the discharged attorney properly filed his contract with the clerk of court, he could have potentially recovered from the defendants in the principal demand with the caveat that his recovery was limited to those items which would not necessitate his running afoul of our Code of Professional Responsibility.

In this particular assignment of error, unlike the discharged attorney in *Clark*, Miller is not arguing that the dismissal of his former client's case was improper. Rather, Miller is arguing that the dismissal of his intervention was improper. Under *Hawthorne*, Miller would have to have put forth some evidence as to how his intervention could proceed without violating any provision of our Code of Professional Responsibility or as to whether he filed his attorney/client contract with the clerk of court. While the record has no evidence of either, the discharged attorney in *Hawthorne* was put on notice that his intervention was being challenged when the defendants in the principal demand filed a summary judgement request directly against it. Here, Miller had absolutely no notice that his intervention was being challenged via the filing of Louisiana Nursery's motion for involuntary dismissal, nor was his intervention even argued as to its status at the hearing below. Therefore, given the lack of notice given to Miller, we remand this case for a hearing regarding the merits of his intervention against Sanchez and Louisiana Nursery. We note that

8

Miller's claims against Louisiana Nursery cannot be based upon him running afoul of any provision of our Code of Professional Responsibility, including, but not limited to, Miller taking a proprietary interest in Sanchez's case or Miller continuing Sanchez's case after having been properly discharged in violation of Sanchez's absolute right to do so.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Miller contends that the WCJ erred when it dismissed the principal demand. Miller is prevented from raising this assignment of error.

This court, in *Clark*, 510 So.2d at 1304, stated the following:

> A litigant can . . . decide not to appeal a dismissal of his suit. The discharged attorney cannot step back into the shoes of his former client and take an appeal to try to maintain the client's action after such a dismissal. Such efforts would enable the discharged attorney to control his former client's suit thereby forcing his continued representation of the client.

A client has an "absolute right to discharge his attorney." *Scott*, 377 So.2d at 69. Allowing Miller to raise this issue would violate that right. Accordingly, we affirm the WCJ's dismissal of Sanchez's claims against Louisiana Nursery.

**CONCLUSION:**

Miller raised two assignments of error: that the WCJ erred in dismissing his intervention and that the WCJ erred in dismissing Sanchez's claim against Louisiana Nursery. We affirm the WCJ's dismissal of Sanchez's claim. However, we find that Miller was not properly put on notice that his intervention was at issue and, therefore, reverse the WCJ's dismissal of his intervention and remand the case for further proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

9