# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-159


ANDRE GUILLORY

VERSUS

ALLIED WASTE INDUSTRIES, INC. & AIG


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 09-01931
SAM L. LOWERY, WORKERS COMPENSATION JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.

## AFFIRMED, AS AMENDED, AND REMANDED WITH INSTRUCTIONS.

Anthony Paul Palermo
Breazeale, Sachse & Wilson
P. O. Box 3197
Baton Rouge, LA 70821
(225) 387-4000
Counsel for Defendant/Appellant:
Allied Waste Industries, Inc.
AIG Domestic Claims, Inc.

Michael Bruce Holmes
Attorney at Law
P. O. Dr. 790
Kinder, LA 70648
(337) 738-2568
Counsel for Plaintiff/Appellee:
Andre Guillory

**SAUNDERS, Judge.**

This is a workers' compensation case. The employee, who was on light duty due to a prior accident, was driving a garbage truck so as to deliver the truck to a crew in Kinder, Louisiana, whose truck had broken down. The employee was driving this truck to the crew so that they could complete their collection route. Prior to reaching the crew in Kinder, the employee had an accident that caused him injuries.

During trial, the employee stated that he had worked since the accident sporadically doing odd-lot jobs. The workers' compensation judge (WCJ) found, *inter alia*, that the employee was entitled to temporary, total disability (TTD) benefits, and that the employer and its insurer were arbitrary and capricious in denying the employee TTD benefits.

The employer raised two assignments of error. The first is that the WCJ erred in awarding the employee TTD benefits. We find merit in this assignment; however, the employee requested that, in the event we find the employer's first assignment of error has merit, we amend the WCJ's judgment to reflect that he was entitled to Supplemental Earnings Benefits (SEB). Given the status of the record before us, we grant the employee's request and amend the WCJ's judgment to reflect that he is entitled to SEB from the date of December 12, 2008. Further, we remand the case for a hearing to determine what, if any, offset the employer is entitled to receive due to the employee's income from odd-lot employment. Finally, we find no abuse of the WCJ's discretion in finding that the employer was arbitrary and capricious in failing to pay the employee any wage indemnity benefits. All other aspects of the WCJ's judgment are affirmed.

**FACTS AND PROCEDURAL HISTORY:**

Andre Guillory (Guillory) was employed by Allied Waste Service (Allied) from

March of 2008 through December 18, 2008. Guillory was employed as a driver of a rear end loader garbage truck. Guillory experienced three accidental injuries that he claimed occurred during the course and scope of his employment. The dates of those accidents are November 6, 2008, November 11, 2008, and December 12, 2008.

Guillory did not seek treatment for his first injury. Following the second injury, Allied sent Guillory to Dr. Sunil Bharwani in Oakdale, Louisiana. On December 8, 2008, Dr. Bharwani diagnosed Guillory with a tear of the meniscus of his left knee and placed him on light duty. Allied accommodated Guillory's limitations by allowing him to perform clerical work in the Oberlin, Louisiana office for two or three days.

On December 12, 2008, a fellow employee approached Guillory at the Oberlin office and informed Guillory that a garbage truck had broken down in Kinder and that a replacement truck needed to be delivered to the awaiting crew. Guillory agreed to drive the replacement truck to the crew. According to Guillory, prior to reaching the crew in Kinder, the replacement truck had a tire malfunction, causing Guillory to lose control of the truck. Guillory was in a one vehicle accident wherein the truck was rolled over. Guillory was transported from the scene by ambulance.

On December 17, 2008, Guillory was again examined by Dr. Bharwani and again placed on light duty. The next day, on December 18, 2008, Allied terminated Guillory. On January 8, 2009, Guillory had made written demand to Allied for indemnity benefits and payment of medical mileage and approval of medical examination. In a letter dated January 27, 2009, Allied, through its insurer, AIG, sent Guillory a letter that stated, "[a]fter completing the investigation of your claim, we find the facts presented do not appear to be covered under the Louisiana work comp

2

act. Your injury does not appear to have arisen out of the course of employment." Guillory has not ever received any indemnity benefits or wages from Allied since December 12, 2008. However, at no time in the course of the litigation does Allied give any explanation for its conclusion that "the facts presented do not appear to be covered under the Louisiana work comp act" nor any justification for its assertion that Guillory's "injury does not appear to have arisen out of the course of employment."

Guillory filed a disputed claim for compensation against Allied and AIG. A trial on the merits was held on October 14, 2009. In Guillory's testimony, he stated that he had engaged in odd-lot employment since the accident.

On October 27, 2009, the WCJ rendered a judgment in favor of Guillory against Allied awarding him TTD benefits from December 13, 2008, a penalty of four thousand dollars for Allied's arbitrary and capricious failure to pay Guillory wage indemnity benefits, a penalty of two thousand dollars for Allied's arbitrary and capricious failure to pay Guillory's mileage reimbursement claims, a penalty of two thousand dollars for Allied's arbitrary and capricious failure to pay for a medical examination from Guillory's choice of orthopedist, and an award of eighteen thousand, five hundred dollars representing attorney's fees pursuant to La.R.S. 23:1201. Allied has appealed this judgment, alleging the following two assignments of error:

**ASSIGNMENTS OF ERROR:**

1. The WCJ erred in awarding Guillory temporary, total disability benefits.

2. The WCJ erred in finding Allied arbitrary and capricious in not paying Guillory temporary, total disability benefits.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In its first assignment of error, Allied contends that the WCJ erred in awarding

Guillory temporary, total disability benefits due to Guillory's testimony that he engaged in some form of employment after the work related injury. We find that Allied's assignment has merit.

In the case before us, Allied posits a question of law as to whether the WCJ was legally correct in its application of La.R.S. 23:1221(1). When conducting an appellate review of such questions of law, appellate courts simply determine if the lower court was legally correct. *Sanchez v. Louisiana Nursery*, 09-1247 (La.App. 3 Cir. 4/7/10), 34 So.3d 1047.

Louisiana Revised Statutes 23:1221(1) (emphasis added) states that compensation for temporary, total disability benefits shall be paid:

(a) For any injury producing temporary total disability of an employee to engage in *any* self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

(b) *For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.*

(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

(d) An award of benefits based on temporary total disability shall cease

4

when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.

In the case before us, Guillory testified as follows:

Q    Now, since the accident, December 12th of 2008, have you been able to do some work?

A    Yes.

Q    What have you been able to do?

A    In fact - - in June, my niece, who lost her husband last year, needed her house painted and she couldn't afford to hire a contractor, so she was trying to help me out and she knows my situation and asked if I could help paint her house, so I told her me and my sons could start on it and try and paint it for her. Yes, we have been - - I painted her house.

. . . .

Q    Did your niece pay you for this work?

A    Yes.

Q    Did you keep a record of how much she paid you?

A    Yes.

Q    As you sit here, do you know how much that total amount was that she paid for that job?

A    $3,125.

Guillory further testified as to working at other jobs. The following is another

excerpt of his testimony:

Q    And other than paint the house, is there anything else that you have done?

A    I drove a truck for Buster's Crawfish three times to haul crawfish, once to New Orleans and a couple times to Houston.

. . . .

5

Q       And have you done anything else?

A       Since I finished painting my niece's house, a friend of mine who also knows my situation asked if I could help paint their bedroom, just the bedroom in their house.

. . . .

Q       Have you done any substitute teaching?

A       I did. I did some substitute teaching like two or three days in February of this last - - this year and again in March and a couple in April and in May.

Given this testimony coupled with the clear language of La.R.S. 23:1221(1)(b), we find that the WCJ was legally incorrect in awarding Guillory temporary, total disability benefits. Accordingly, we reverse the WCJ's judgment solely on whether Guillory is entitled to temporary, total disability benefits under La.R.S. 23:1221(1)(b).

Guillory has requested in brief that should this court find that the WCJ was legally incorrect in awarding him temporary, total disability benefits, that we amend the judgment of the WCJ to reflect that Supplemental Earnings Benefits (SEB) should have been awarded to him. To do so would require this court to conduct a de novo review of the record to determine whether Guillory proved below that he is entitled to SEB under La.R.S. 23:1221(3).

Louisiana Code of Civil Procedure Article 2164 states, in pertinent part, "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." Our supreme court, in *Gonzales v. Xerox Corp.*, 320 So.2d 163, 165-66 (La.1975) (citations and footnotes omitted) stated:

> While the trial court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law.

6

. . . .

> In addition to the constitutional authority, and consistent with it, there is a very practical consideration which encourages our appellate courts to exercise their jurisdiction to review factual findings: judicial economy. When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process. Although the appellate court does not gain the benefit of personally viewing the witnesses, it does have a complete record and the constitutional authority to decide.

The WCJ conducted a trial below that included exhibits, testimony, and witnesses presented. As such, we find that the record before us is complete, and we will look to that record to determine whether Guillory was entitled to SEB.

Louisiana Revised Statutes 23:1221(3) states, in pertinent part, that workers' compensation is to be paid according to the following:

> **(3) Supplemental earnings benefits.**
>
> (a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.

Prior to trial, the parties stipulated to Guillory experiencing an accident giving rise to injury as defined by La.R.S. 23:1021, while in the course and scope of his employment on November 6, 2008, November 11, 2008, and December 12, 2008. The parties also stipulated that Guillory's average weekly wage was $767.20, that Guillory was on light duty prior to the December 12, 2008 accident, and that Guillory

7

was terminated on December 18, 2008. Finally, the parties stipulated that Guillory had made written demand to Allied for indemnity benefits and payment of medical mileage and approval of examination through correspondence on January 8, 2009, and that Guillory received no indemnity benefits or wages from Allied since December 12, 2008.

Given these stipulations, it is clear that Guillory is entitled to SEB. Therefore, we render that Allied pay Guillory all SEB that he is entitled to receive from the date of December 12, 2008. However, the record in unclear as to what income, if any, Guillory earned during this time frame that would allow Allied an offset of paying Guillory some of the SEB. Thus, we remand the case to determine what, if any, offset Allied is entitled to receive due to Guillory's income from painting his niece's and friend's home, driving a crawfish truck, substitute teaching, or otherwise.

**ASSIGNMENT OF ERROR NUMBER TWO:**

Allied alleges in its second assignment of error that the WCJ erred in finding Allied arbitrary and capricious in not paying Guillory temporary, total disability benefits. Allied's assignment of error is misguided.

The WCJ's judgment did not state that the penalties were for Allied's failure to pay TTD benefits. The judgment states that Allied is responsible to Guillory for penalties "said sum representing statutory penalties upon unpaid wage indemnity benefits." Therefore, we will treat Allied's second assignment of error as a request for this court to review whether Allied should be cast with penalties for failure to pay any type of wage indemnity benefits to Guillory.

The standard of reviewing the propriety of penalties awarded by a WCJ is that of abuse of discretion. *Halker v. American Sheet Metal*, 04-1407 (La.App. 3 Cir.

8

3/16/05), 898 So.2d 629. Thus, we will determine whether the WCJ's finding of arbitrary and capricious behavior by Allied in denying Guillory wage indemnity benefits was clearly an abuse of discretion. While we recognize that Allied's assignment of error specifies TTD benefits, this review is proper as Allied, in brief, argues that it was not arbitrary and capricious in failing to pay Guillory SEB because Guillory failed in his duty under La.R.S. 23:1221(3)(f).[1]

Allied argues that because Guillory did not notify it of his employment status, it was not in a position to assess whether Guillory had earned ninety percent of his pre-injury income in order to qualify for SEB. However, in a letter dated January 27, 2009, Allied, through its insurer, AIG, sent Guillory a letter that stated, "[a]fter completing the investigation of your claim, we find the facts presented do not appear to be covered under the Louisiana work comp act. Your injury does not appear to have arisen out of the course of employment."

The language of the January 27, 2009, letter is clear. Allied, through AIG, informed Guillory of its position that his injuries/disabilities were not covered by workers' compensation. Thus, there was no reason for Guillory to notify Allied of his employment status. As such, we find Allied's argument is without merit.

Therefore, given that Allied has stipulated that Guillory's injuries were a result

---

[1] Louisiana Revised Statutes 23:1221(3)(f) states:

Any compensable supplemental earnings benefits loss shall be reported by the employee to the insurer or self-insured employer within thirty days after the termination of the week for which such loss is claimed. The director shall provide by rule for the reporting of supplemental earnings benefits loss by the injured worker and for the reporting of supplemental earnings benefits and payment of supplemental earnings benefits by the employer or insurer to the office and may prescribe forms for such reporting. The office, upon request by the employer or insurer, shall provide verification through unemployment compensation records under the Louisiana Employment Security Law of any claimed supplemental earnings benefits loss and shall obtain such verification from other states, if applicable.

9

of work related accidents on November 6, 2008, November 11, 2008, and December 12, 2008, and that Guillory never received any indemnity benefits or wages from Allied since December 12, 2008, we find no abuse of the discretion afforded to the WCJ in finding that Allied was arbitrary and capricious in denying Guillory indemnity wage benefits.[2]

**CONCLUSION:**

Allied raised two assignments of error. We found merit to the first assignment of error. However, Guillory requested that, in the event we find Allied's first assignment of error has merit, we amend the WCJ's judgment to reflect that Guillory was entitled to SEB. Given the status of the record before us, we granted Guillory's request and amend the WCJ's judgment to reflect that he is entitled to SEB starting on December 12, 2008. Further, we remand the case for a hearing to determine what, if any, offset Allied is entitled to receive in paying Guillory SEB due to Guillory's income from painting his niece's and friend's home, driving a crawfish truck, substitute teaching, or otherwise.

In Allied's second assignment of error, it claimed that the WCJ erred in finding it arbitrary and capricious in not paying Guillory temporary, total disability benefits. The WCJ's judgment actually awarded Guillory penalties due to Allied's arbitrary

---

[2] The WCJ correctly noted Allied's questionable behavior at the end of the litigation:

[W]e are talking here about a 50-some-year-old disabled veteran, college graduate with 30-some-odd-year successful work history driving a 30-ton garbage truck full of garbage; and apparently, from all I can gather, he is doing this to bail out the company. In gratitude, which I suppose is not really the word I'm looking for here, sounds like retribution, I think the company has plumbed to a new depth and added a new dimension to the term arbitrary and capricious and almost callous. I just can't fathom why they did what that did. I don't think any of us know why they - - I'm not even sure who the "they" is here. All the people from Allied seem to either not know anything or passing it onto somebody. . . . But there was absolutely nothing done; and even [defense counsel], who is better at [] this than most people I know, including me, can't do much with this one because there's just nothing to say in these people's defense.

10

and capricious refusal to pay wage indemnity benefits.  We found no abuse of discretion in the WCJ's determination that Allied's actions with respect to SEB were arbitrary and capricious.

All other aspects of the WCJ's judgment were not raised as error by Allied. Therefore we affirm that Allied is to pay Guillory a penalty of four thousand dollars for its arbitrary and capricious failure to pay Guillory wage indemnity benefits, a penalty of two thousand dollars for its arbitrary and capricious failure to pay Guillory's mileage reimbursement claims, a penalty of two thousand dollars for its arbitrary and capricious failure to pay for a medical examination from Guillory's choice of orthopedist, and an award of eighteen thousand, five hundred dollars representing attorney's fees pursuant to La.R.S. 23:1201.  All costs of this appeal are assessed to Allied.

**AFFIRMED, AS AMENDED, AND REMANDED WITH INSTRUCTIONS.**