STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1164

CARLA BROUSSARD-SCHER

VERSUS

BRIAN CHRISTOPHER LEGENDRE, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2009-0641
HONORABLE PHYLLIS M. KEATY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Jimmie C. Peters, Judges.

AFFIRMED IN PART, REVERSED IN PART.

Peters, J., dissents with written reasons.

Daniel M. Landry  III
P. O. Box 3306
Lafayette, LA 70502
(337) 232-5170
Counsel for Plaintiff/Appellee:
Carla Broussard-Scher

**Ronald D. Cox**
**Attorney at Law**
**113 W. Convent St.**
**Lafayette, LA 70501**
**(337) 233-9743**
**Counsel for Defendants/Appellants:**
**Brian Christopher Legendre**
**Tiffany R. Thomas**


**Elizabeth Anne Long**
**Attorney at Law**
**113 W. Convent St.**
**Lafayette, LA 70501**
**(337) 233-9743**
**Counsel for Defendants/Appellants:**
**Brian Christopher Legendre**
**Tiffany R. Thomas**

**SAUNDERS, Judge.**

This is a visitation case where the maternal grandmother seeks visitation with the child over the objection of the child's parents. The child's parents were never married though they lived together when the child was born, but currently live separate and apart.

The trial court awarded the maternal grandmother visitation based on La.Civ.Code art. 136(B) and appointed a parenting coordinator. The child's parents appeal alleging that the trial court cannot award the maternal grandmother visitation over the objections of fit parents who provide for the child and that the trial court cannot appoint a parenting coordinator under La.R.S. 9:358.1(A) without a judgment of custody. We affirm the trial court's judgment regarding visitation and reverse the segment of the judgment appointing a parenting coordinator.

**FACTS AND PROCEDURAL HISTORY:**

L.L. was born on January 25, 2005 to Brain Legendre and Tiffany Thomas (collectively "the Parents"). The Parents were college students at the time living in concubinage. Tiffany Thomas' mother, Carla Broussard-Scher ("Scher"), was present along with the Parents when L.L. was born. When the Parents were released from the hospital, they, along with L.L. lived at Scher's house for a week. Thereafter, the Parents went back to their apartment that they shared with other roommates, and Scher became the primary caregiver to L.L. Scher then purchased a mobile home trailer for the Parents and L.L. The Parents moved into the mobile home with Scher still remaining a prominent figure in L.L.'s life.

In early 2007, the romantic relationship between the Parents terminated, but the Parent's relationship, as it related to L.L., remained intact. Scher's role in L.L.'s life remained materially unchanged until approximately November of 2008 when conflict

arose between Scher and Tiffany Thomas. On February 3, 2009, Scher filed a rule to establish visitation pursuant to La.Civ.Code art. 136(B). The Parents responded with an exception of no cause of action. On April 2, 2009, the trial court denied the Parents' exception and, by stipulation, the trial court appointed Dr. Kenneth Bouillon, a mental health professional, to determine and make recommendations concerning the best interests of L.L. On May 12, 2009, an order of interim visitation was stipulated to by the parties. On June 22, 2009, and July 7, 2009, Scher filed a rule for contempt alleging that the Parents were not adhering to the interim visitation and stipulations.

In the interim, Dr. Bouillon presented his findings to the court that extraordinary circumstances existed as to the relationship between the parties and that it was in the best interest of L.L. to have visitation with Scher. The parties then entered into a second consent judgment and joint stipulation on September 9, 2009. On September 24, 2009, Scher filed another rule for contempt, followed by the Parents filing their own rule for contempt on October 20, 2009. Finally, Scher filed her fourth rule for contempt on November 4, 2009.

On November 19, 2009, the Parents filed a motion and order to terminate visitation and to fix for trial on the merits Schers' original rule to establish visitation. A hearing on all of the rules for contempt filed by the parties took place on December 3 and 17, 2009. The trial court ruled that only the Parents were in contempt.

On January 29, 2010, Scher filed an exception of no cause or right of action and prematurity against the Parents' motion and order to terminate visitation and fix the visitation issue for trial. On April 15, 2010, Scher's exceptions were denied. On April 27, 2010, and May 24, 2010, a two-day trial was held on Scher's original rule to establish visitation pursuant to La.Civ.Code art. 136. On July 1, 2010, the trial

court signed a judgment finding, *inter alia*, that extraordinary circumstances existed, that visitation with Scher was in L.L.'s best interest, that Scher be granted visitation with L.L., that appointed a parenting coordinator. The Parents have appealed.

**DISCUSSION OF THE MERITS:**

The Parents fail to assign any specific errors in brief. Rather, they list four contentions under the main heading of "ARGUMENT." We will address these contentions in this discussion of the merits.

*No Cause of Action*:

The Parents first contend that the trial court erred in denying their peremptory exception of no cause of action that they filed against Scher's rule to establish visitation pursuant to La.Civ.Code art. 136(B). We do not agree.

> A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. No evidence may be introduced to support or controvert an exception of no cause of action. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.

> Louisiana has chosen a system of fact pleading. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition. However, the mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action.

> The burden of demonstrating that the petition states no cause of action is upon the mover. In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a de novo review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief.

3

*Ramey v. DeCaire*, 03-1299, pp.7-8 (La. 3/19/04), 869 So.2d 114, 118-19.

As such, the Parents must show that Scher's petition or pleading, if the allegations are taken as true, does not state a cause of action to which the court can grant a remedy. Scher's pleading requests visitation with L.L. based on La.Civ.Code art. 136, which states:

> A. A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.
>
> B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:
>
> > (1) The length and quality of the prior relationship between the child and the relative.
> >
> > (2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
> >
> > (3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
> >
> > (4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
> >
> > (5) The mental and physical health of the child and the relative.
>
> C. In accordance with Paragraph B of this Article, extraordinary circumstances may include when a parent is addicted to a controlled dangerous substance.
>
> D. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article.

The Parents assert that Scher's pleading did not state a valid cause of action because she cannot seek visitation rights to L.L. under La.Civ. Code art. 136(B). Rather, they argue that Scher can only seek visitation rights to L.L. under La.R.S.

9:344. They base their argument on the language of La.Civ.Code art. 136(D) that states, "[i]n the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article." The language of La.Civ.Code art. 136(D) is clear. *If* the language of La.R.S. 9:344 and La.Civ.Code art. 136 are in conflict, *then* the language in La.R.S. 9:344 applies. Thus, the Parents' argument has merit if La.R.S. 9:344 has language mandating its application to the situation before us.

Louisiana Revised Statutes 9:344 states:

A. If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

B. When the parents of a minor child or children live in concubinage and one of the parents dies, or is incarcerated, the parents of the deceased or incarcerated party may have reasonable visitation rights to the child or children during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

C. If one of the parties to a marriage dies or is incarcerated, the siblings of a minor child or children of the marriage may have reasonable visitation rights to such child or children during their minority if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

D. If the parents of a minor child or children of the marriage are legally separated or living apart for a period of six months, the grandparents or siblings of the child or children may have reasonable visitation rights to the child or children during their minority, if the court in its discretion find that such visitation rights would be in the best interest of the child or children.

Louisiana Revised Statutes 9:344 is clear and merely delineates what siblings and grandparents have to prove, if their situations fit certain criteria, in order to

receive visitation rights under that statute. It contains no prohibition of grandparents seeking visitation rights under La.Civ.Code art. 136 should the situation at hand not meet those criteria. In order to meet the criteria of part La.R.S. 9:344(A), the child's parents must be married, and one of those parents must have died. Here, neither is true. In order for La.R.S. 9:344(B) to apply, the child's parents must have lived in concubinage and, while living in concubinage, one of them must have died. Here, while L.L's parents lived in concubinage at L.L.'s birth, they now live separate and apart and neither has died. Grandparents are not addressed in La.R.S. 9:344(C). It applies to siblings of a child. Finally, under La.R.S. 9:344(D), grandparents are potentially afforded visitation rights if the child's parents were married and are legally separated or living apart for a period of six months. Here, L.L.'s parents were never married.

Accordingly, in the situation before us, there is no conflict between La.R.S. 9:344 and La.Civ.Code art. 136, as the status of the parties does not fit under any scenario delineated in La.R.S. 9:344. Thus, the Parents' contention that Scher could *only* seek visitation with L.L. under La.R.S. 9:344 is incorrect, as Scher can potentially state a cause of action under La.Civ.Code art. 136(B).

Next, we must look to Scher's pleading to determine if she stated a cause of action under La.Civ.Code art. 136(B). We find that her pleading meets the requirements necessary to defeat the Parents' exception.

Louisiana Civil Code Article 136(B), in pertinent part, states, "[u]nder extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child." This

6

language is not ambiguous. Under La.Civ.Code art. 136(B) the party seeking visitation with a child must show that extraordinary circumstances exist, that the party is a relative of the child in some fashion, that the party does not have custody of the child, and that it is in the child's best interest for the party to be granted reasonable visitation rights. Here, Scher alleges in her pleading that extraordinary circumstances exist in Paragraph number six, that she is L.L.'s maternal grandmother in Paragraph two, that she is not granted custody of L.L. in Paragraph three, and that it is in L.L.'s best interest that she be granted visitation in numerous paragraphs in the pleading. Scher concludes her pleading requesting visitation with L.L. and requesting the appointment of a mental health professional to ascertain if visitation with her is in the best interest of L.L. Accordingly, we find no error by the trial court in denying the Parents' exception.

***Failure to Make a Determination Regarding Extraordinary Circumstances***:

The Parents next contend that the trial court failed to determine whether extraordinary circumstances existed under La.Civ.Code art. 136(B). This contention is without merit.

This issue raised by the Parents poses a question of law, as, under La.Civ.Code art. 136(B), a court must find that extraordinary circumstances exist prior to awarding a party visitation with a child. In reviewing such questions of law, an appellate court conducts a *de novo* review to determine whether the lower court was legally correct. *Guillory v. Allied Waste Indus., Inc.*, 10-159 (La.App. 3 Cir. 10/6/10), 47 So.3d 23.

The trial court's judgment states the following:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Court find that Extraordinary Circumstances, pursuant to [La.Civ.Code art.] 136(B), exist and hereby orders and award visitation to the Maternal Grandparent, CARLA BROUSSARD-SCHER, with the

minor child, [L.L.], the minor child of defendants, BRIAN CHRISTOPHER LEGENDRE and TIFFANY RENE THOMAS.

The trial court clearly expressed that it found extraordinary circumstances in its judgment cited above. Accordingly, the Parents' contention that the trial court failed to make a finding regarding extraordinary circumstances is ungrounded, and we find no error by the trial court in this regard.

*Is the Determination of Extraordinary Circumstances Warranted*:

In their third issue raised, the Parents argue that the trial court's determination that extraordinary circumstances existed in this case was in error. We disagree.

A trial court has vast discretion in determining matters of child visitation. *Dearmon v. Dearmon*, 96-222 (La.App. 3 Cir. 11/13/96), 682 So.2d 1006. An appellate court should not disturb the lower court's determination regarding child visitation unless the lower court has abused its vast discretion. *Id*. Further, it is well-settled that an appellate court shall not set aside a lower court's finding of fact in the absence of manifest error or unless those factual findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

The Parents contend that the trial court's determination that extraordinary circumstances existed in this case was in error. Justice Weimer concurring in *Huber v. Midkiff*, 02-664, p. 8 (La. 2/7/03), 838 So.2d 771, 778 cited BLACK'S LAW DICTIONARY 236 (7th ed. 1999) to define extraordinary circumstances as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event." This definition was cited positively by our first circuit in *Shaw v. Dupuy*, 06-546 (La.App 1 Cir. 2/9/07), 961 So.2d 5. Therefore, we must determine whether a reasonable basis exists in the record for the trial court's factual finding that the situation between the Parents, L.L., and Scher presents a set of unusual facts not

8

associated commonly with raising a child.

The record is such that the trial court could reasonably find that Scher was present in the delivery room when L.L. was born, that the Parents and L.L. lived in Scher's home after leaving the hospital, and, thereafter, the Parents returned to the apartment where they lived in concubinage and had other roommates, but L.L. stayed with Scher. Further, there is a reasonable basis to find that Scher purchased a mobile home for the Parents so as to remove them from the apartment they shared with roommates, and that, after the purchase of this mobile home, Scher remained the primary caregiver of L.L. Finally, there is a reasonable basis to find that the Parents, at various times, chose to "party" rather than spend time with L.L.

Moreover, the record contains expert testimony by Dr. Kenneth Bouillion, the court-appointed mental health professional. Dr. Bouillion testified that extraordinary circumstances existed in this case and that it was in the best interest of L.L. to award Scher visitation. Dr. Anne Wingate Spell, an expert hired by the Parents, also testified that it would be reasonable for Scher to have visitation with L.L.

Given the testimony of Scher, Dr. Bouillion, and Dr. Spell, we find ample support for the trial court's finding that extraordinary circumstances exist in the case. Further, we note that the Parents did not make an argument that the amount of visitation that the trial court granted to Scher was abusively high. Rather, the Parents argue that awarding Scher any visitation over their objections runs afoul of the United States Supreme Court case of *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054 (2000) because both parents are fit and in accord.

This court, in *State ex rel. Satchfield v. Guillot*, p. 9 (La.App. 3 Cir. 6/26/02), 820 So.2d 1255, 1262, addressed *Troxel* when it stated:

9

All issues concerning non-parental visitation requests must now be considered in light of the United States Supreme Court decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In that case, the Supreme Court found that a Washington state statute allowing visitation rights to paternal grandparents violated the mother's due process right to make decisions concerning the care, custody, and control of her children.

. . . .

The Supreme Court granted certiorari in the case to consider "whether § 26.10.160(3) [of the Revised Code of Washington], *as applied* to Tommie Granville and her family, violates the Federal Constitution." *Troxel*, 530 U.S. at 65, 120 S.Ct at 2059 (emphasis added).

Given the argument raised by the Parents and the above cited language from *Satchfield*, we must look to determine whether La.Civ.Code art. 136(B), as applied to the Parents, Scher, and L.L. under the circumstances of this case violates the Federal Constitution. The *Troxel* court addressed the source of the right potentially violated when it stated:

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.*, at 720, 117 S.Ct. 2258; see also *Reno v. Flores*, 507 U.S. 292, 301-302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court.

*Troxel*, 530 U.S. at 65, 120 S.Ct. at 2060.

With this directive in mind, we find that the trial court's application of La.Civ.Code art. 136(B) does not violate *Troxel* or the Federal Constitution. In

10

*Troxel*, 530 U.S. at 70, 120 S.Ct. at 2062 (emphasis added), the Supreme Court

addressed what was necessary for a statute as applied to pass constitutional muster

when it stated:

> In an ideal world, parents might always seek to cultivate the bonds
> between grandparents and their grandchildren. Needless to say,
> however, our world is far from perfect, and in it the decision whether
> such an intergenerational relationship would be beneficial in any
> specific case is for the parent to make in the first instance. And, *if a fit
> parent's decision of the kind at issue here becomes subject to judicial
> review, the court must accord at least some special weight to the
> parent's own determination*.

In the case before us, we find no evidence that the trial court failed to give

special weight to the Parents' own determination regarding visitation or that the trial

court decision "constitutes a substitution of its judgment for the judgment of [the

Parents]." *Satchfield*, 820 So.2d at 1265. It is true that there are no findings by any

court that either of the Parents are unfit. However, the Supreme Court stated in

*Troxel*, at 68-69, 120 S.Ct. at 2061 (emphasis added) the following:

> so long as a parent adequately cares for his or her children (i.e., is fit),
> there will *normally* be no reason for the State to inject itself into the
> private realm of the family to further question the ability of that parent
> to make the best decisions concerning the rearing of that parent's
> children.

This language clearly envisions a situation that is not normal, i.e. extraordinary;

and in such a case a court can step in and make its own determination of what is in

the best interest of the child. Here, the trial court did just that. It made a finding of

extraordinary circumstances based on solid, uncontroverted expert testimony, and

stepped in to make a determination of what is in L.L.'s best interest.

Moreover, it is clear that the trial court did not step in without a basis. While

we recognize that parents are presumed to act in the best interest of a child, there is

no mandate that this presumption is not able to be overcome. Here, the record

11

dictates that this presumption is overcome in the form of unanimous expert testimony that completely disallowing Scher to have visitation with L.L. was not in the child's best interest. Thus, we find that application of La.Civ.Code art. 136(B) to the case before us does not infringe upon the Parents' constitutional right to make decisions regarding the custody, care and control of their children, nor does it fun afoul of *Troxel*. Accordingly, we find that the Parents' argument is without merit.

***Improper Appointment of Parenting Coordinator*:**

Finally, the Parents contend that the trial court erred in appointing a parenting coordinator due to a lack of legal authority. We find that this contention has merit.

This issue raised by the Parents presents an issue of law. As such, we will conduct a *de novo* review to determine whether the lower court was legally correct. *Guillory v. Allied Waste Indus., Inc.*, 10-159 (La.App. 3 Cir. 10/6/10), 47 So.3d 23.

Louisiana Revised Statutes 9:358.1(A) (emphasis added) states the following:

> On motion of a party or on its own motion, the court may appoint a parenting coordinator in a child custody case for good cause shown *if the court has previously entered a judgment establishing child custody*, other than an ex parte order. The court shall make the appointment on joint motion of the parties.

The trial court did not enter a judgment establishing child custody, as custody was not an issue in this case, nor had it ever been an issue as L.L.'s parents are amicable in allocating the time they share between each other with L.L. Therefore, the appointment of a parenting coordinator was legally incorrect, and the judgment is reversed in this regard.

**DECREE:**

Brian Christopher Legendre and Tiffany Rene Thomas present this court with four contentions of error by the trial court. We find no error with respect to the trial

court's judgment wherein Carla Broussard-Scher was awarded visitation with L.L. However, we did find that the trial court committed legal error in appointing a parenting coordinator and reverse the part of the judgment related to that issue. All costs of this appeal are taxed to Brian Christopher Legendre and Tiffany Rene Thomas.

**AFFIRMED IN PART, REVERSED IN PART.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1164

CARLA BROUSSARD-SCHER

VERSUS

BRIAN CHRISTOPHER LEGENDRE, ET AL.

PETERS, J., dissents.

I agree with the majority's conclusion that La.R.S. 9:358.1(A) prohibits the appointment of a parenting coordinator absent a prior judgment establishing custody. I also agree with the majority's reliance on *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054 (2000) and *State ex rel. Satchfield v. Guillot,* 02-150 (La.App 3 Cir. 6/26/02), 820 So.2d 1255, to conclude that La.Civ.Code art. 136 does provide a remedy to a grandparent under circumstances similar to those before us. Where I disagree with the majority is the application of *Troxel* and *Satchfield* to the case now before us.

As pointed out by the majority, the United States Supreme Court in *Troxel* made it clear that it is initially the parent's decision to set the parameters for the involvement of grandparents in the lives of their children, and absent any showing of unfitness on the part of the parent, that decision must be given "special weight" by the court considering a grandparent's request for visitation. *Troxel*, 530 U.S. at 70, 120 S.Ct. at 2062. Additionally, as also pointed out by the majority, *Troxel* establishes that as long as parents adequately care for their children, the normal situation is that a state should not inject itself into the family's private matters or further question the parents' decisions concerning the manner in which they raise their children.

With regard to the parents in the matter now before us, the majority specifically

notes that there "there are no findings by any court that either of the Parents are unfit." Majority at 11. Notwithstanding this conclusion, the majority attempts to make the matter now before one of extraordinary circumstances as required by La.Civ.Code art. 136(B). The trial court and the majority rely on the opinion of Dr. Bouillion that extraordinary circumstances exist in this case. However, stating that an extraordinary circumstance exists does not make it so, and Dr. Bouillion seems to rely primarily on the prior history of the grandmother's assistance to the parents. In my opinion, Dr. Bouillion's comments fall short of identifying an extraordinary circumstance and are more in the line of recommendations similar to those expressed by Dr. Spell.

While La.Civ.Code art. 136 does not contain a list of extraordinary circumstances that would trigger its application, it does give us guidance by suggesting that "extraordinary circumstances may include when a parent is addicted to a controlled dangerous substance." La.Civ.Code art. 136(C). Additionally, La.R.S. 9:344 points to other extraordinary circumstances that would suggest a legal right of a grandparent to have visitation over the opposition of the parent or parents. These include situations where one of the parents has died or has been interdicted or incarcerated.

In the matter before us, I find nothing rising to a level comparable to the statutorily suggested extraordinary circumstances to justify the trial court's judgment. Here the grandparent was a primary caregiver for only a short time after the birth of the minor child. After that time, she did nothing more than that which would have been expected of any grandparent

I would reverse the trial court judgment.

2